FREDERICK SYLVESTER v. JOHN BORN ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
NO. 1 OF PHILADELPHIA COUNTY.

Argued January 30, 1890—Decided February 24, 1890.
[To be reported.]

1. When time is not of the essence of the contract, either expressly or from
the very nature of the subject, equity will specifically enforce an agree-
ment to sell real estate, notwithstanding the vendee has not tendered
performance within the time limited therefor, unless there has been
gross laches on his part, or a change of circumstances rendering such
enforcement inequitable.

2. An enhancement in the price of lands in the neighborhood, subsequent
to the date of the contract, does not constitute such a change of circum-
stances, when it appears to have arisen from the making of a number
of purchases by the vendee, and not from a general demand for property,
and no perceptible rise is shown to have occurred during the period of
the vendee's delay.

(a) The defendant gave to the plaintiff a receipt for $50, deposited to se-
cure the consummation of an agreement for the sale by the former to
the latter of certain described real estate, the terms of sale being stated
in the receipt to be that the price, $6,000, should be paid in cash upon
the delivery of a deed to the plaintiff within sixty days from date.

(b) The receipt stipulated further that the deposit should be returned in
default of such conveyance within sixty days, or, on failure to make set-
tlement within said time, it should be forfeited and treated as liquidated
damages; otherwise, to be treated as part of the purchase money and
credited thereon in the settlement:

3. The contract set out in this receipt was not a mere unilateral agreement,
nor such a contract as equity would not enforce specifically; the receipt
having been signed by the vendor and delivered to and accepted by the
vendee, it created a binding contract specifically enforceable by the latter,
notwithstanding that it was not signed by him.

4. Whether time was of the essence of this contract or not, equity would
not so treat it when the parties themselves did not, and when the first
intimation from the vendor that time was material came after a dispute
on a collateral matter arising three days subsequent to the time limited,
during which delay the contract was recognized by the vendor as still
in force.

Before STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM
and MITCHELL, JJ.

No. 168 July Term 1889, Sup. Ct.; court below, No. 438
December Term 1888, C. P. No. 1, in Equity.

Statement of Facts.

On December 18, 1888, Frederick Sylvester filed a bill in equity against John Born and J. Wesley Supplee, praying for specific performance of a contract for the sale of certain real estate by the defendants to the plaintiff. The defendants having answered, and issue having been joined, the court appointed *Mr. Walter George Smith* examiner and master, by whom the following facts were found:

1. The plaintiff and the defendant, Born, entered into an agreement, on August 9, 1888, under which the former agreed to buy, and the latter to sell premises No. 446 North Tenth street, for the price or sum of $6,000 in cash, upon the execution and delivery of a good and sufficient deed of conveyance of the premises within sixty days from date.

2. After the agreement had been made, it was found by the purchaser that the title to the premises was in J. Wesley Supplee, whereupon Mr. Born stated that whatever he did Mr. Supplee would approve, and he engaged to produce this approval in writing.

3. The sum of $50 as hand money was paid by the plaintiff to the defendant Born, who signed the following receipt:

" Received from' Frederick Sylvester, $50, deposited by him to secure the consummation of the agreement of sale, entered into between us this day, for the purchase and sale of all that certain three-story building, situate at the southwest corner of Tenth Street and Hamilton Street, No. 446 N. Tenth Street, . . . . which I have agreed to sell to him and which he has agreed to purchase, for the price or sum of $6,000, to be paid in cash upon the execution and delivery of a good and sufficient deed of conveyance to him of said premises within sixty days from this day; this present deposit to be returned to said Frederick Sylvester in default of said conveyance by me within the time specified, or to be forfeited and treated as liquidated damages in case of the failure on the part of Frederick Sylvester to make settlement as aforesaid; otherwise to be treated and considered as part of the purchase money in settlement. Possession to be given on or before the first day of January next (1889). I agree to procure the assent of J. Wesley Supplee to this present agreement to sell.

" JOHN BORN."

4. A press copy of this receipt was handed by Born to de-

fendant Supplee, on the day of its date, and he noted upon it the following, "I confirm the sale, J. Wesley Supplee." The following was noted upon the original agreement, subsequently, by the representative of the Finance Company of Pennsylvania, for whose benefit the purchase had been made by the plaintiff: "Approved, WHARTON BARKER."

5. On October 11, 1888, three days after the expiration of the sixty days limited by the agreement for settlement, the defendant Born consented to a settlement on October 18, 1888, but a disagreement over his liability for rent from the date of settlement to January 1, 1889, the date fixed for a surrender, having arisen between him and the plaintiff, he then stated that he was no longer bound by the agreement and would not convey. On the same date, he called on J. Wesley Supplee, the other defendant, and instructed him not to make a deed.

6. On October 10, 1888, the plaintiff notified defendant Supplee, that October 18th had been fixed for a settlement. To which reply was made by Supplee, dated October 11th, that the time for the settlement had expired, and he had no present desire to sell the property.

7. On November 1, 1888, a formal tender of a deed for execution, with the full amount of the purchase money, was made by plaintiff to defendant Supplee, and by him refused.

8. During the sixty days named in the agreement of sale, no intimation was given that the time limit would be insisted on.

9. The value of real estate in the neighborhood of the premises enhanced in value considerably after the agreement of sale, but only by reason of the purchases of the plaintiff's principal, the Finance Company of Pennsylvania. There does not appear to have been any increased demand for property there by other investors, nor any perceptible increase between October 8th and 11th.

Upon the facts so found by him the master reported his opinion as follows:

The facts of this case raise two questions: 1. Was time of the essence of the contract, either by the expressed agreement of the parties, or by construction of law? 2. If not, were the circumstances changed after the expiration of sixty days, so that

Master's Report.

the granting of a decree for specific performance would work a hardship to the defendants?

There can be no doubt that on August 9, 1888, the minds of all the parties met, and a mutual obligation rested upon them. The defendants were bound to convey the property, and the plaintiffs to pay $6,000 for it. This appears from the language of the receipt or agreement itself, without resorting to the aid of any extraneous evidence. Thus, it recites that $50 have been deposited by the plaintiff to secure the consummation of an agreement entered into for the purchase and sale of the premises "which I have agreed to sell him, and which he has agreed to purchase for the price or sum of six thousand (6,000) dollars, to be paid in cash upon the execution of a good and sufficient deed of conveyance to him of said premises within sixty days from this day."

It is familiar law, that notwithstanding the limitation of time for the completion of the mutual agreement of the parties in a contract such as this, equity will enforce a specific performance, unless there be a change of circumstances, such that the payment of interest will not make a suitable compensation, or there has been gross laches on the part of the plaintiff: Taylor v. Longsworth, 14 Pet. 174; Remington v. Irwin, 14 Pa. 145; Tiernan v. Roland, 15 Pa. 438.

It is equally familiar, that time may be made of the essence of the contract, either by the express stipulation of the parties, or from the very nature of the subject matter of the agreement: Pomeroy on Specif. Perf., § 384; Westerman v. Means, 12 Pa. 99. And it is contended by the defendants that the next clause of the agreement constitutes such an express stipulation, viz.: "This present deposit to be returned to said Frederick Sylvester in default of said conveyance by me within the time specified, or to be forfeited and treated as liquidated damages in case of the failure on the part of Frederick Sylvester to make settlement as aforesaid."

Standing by itself, this clause certainly offers strong ground for the conclusion that the parties stipulated that time should be essential, but it must be taken in connection with the rest of the memorandum and construed in the light of the acts of the parties, in order to give it proper interpretation. Evidently, the primary object of the memorandum or receipt was

Master's Report.

to set forth the fact, so that no room could arise for future dispute, that an agreement had been entered into between the parties for the purchase and sale of the premises, and that $50 hand money had been paid to bind the bargain. The addition of the clause fixing a time limit for the performance of the remaining duties that rested upon the parties, and fixing a penalty for non-performance, in no way changed the character of the writing. At the time the agreement of minds was reached, the equitable title to the property vested in the purchaser, and the defendants' right to the payment of the purchase money at the termination of the sixty days became fixed.

This does not present the case of a contract where some precedent condition must be performed by either of the parties before a mutual obligation arises; and here is the test whether or not equity will relieve against the breach. Thus, it is said by a well-known text writer: " Where a contract depends upon a condition precedent, . . . . . then equity will not relieve, . . . . . for no court has the power to make a new contract for the parties, which shall confer rights where no rights at all originally existed. But . . . . . if the intention of the parties is that the rights under the agreement shall vest at once upon its conclusion, subject, however, to be defeated or ended upon the non-performance of the provision which constitutes the subsequent condition, or its non-performance at or before a specified day, then equity, by virtue of its general jurisdiction over penalties and forfeitures, has power to relieve the defaulting party from the loss or forfeiture caused by his breach of this subsequent condition. This power of relief would even more certainly exist when the breach was a failure, not to do the thing at all, but merely to do it at or within the time stipulated by the contract. It is therefore held in a great number of cases, that the forfeiture provided for by such a clause as the one described above, on the failure of the party to fulfil at the proper time, unless such failure is intentional, or causes an injury to the other party, which cannot be compensated, will be disregarded and set aside in equity, and the defaulting party performing or being ready and willing to perform, at a subsequent time, will be allowed to enforce the contract notwithstanding his delay: " Pomeroy on Specif. Perf., § 379; Vernon v. Stephens, 2 P. Wms. 66; DeCamp v. Feay,

5 S. & R. 323; Edgerton v. Peckham, 11 Paige 352; McClarty v. Cothey, 31 Ia. 505.

The case of Dagenham Dock Co., L. R. 8 Ch. Ap. 1022, affords an example of the principle stated in the foregoing quotation. A company agreed with the owner to purchase a lot for £4,000; £2,000 to be paid down, and £2,000 at a future day named, with a provision that if the whole £2,000 and interest was not paid on that day, in which respect time was to be of the essence of the contract, the vendor might retake the land without repaying any part of the purchase money already paid by the purchaser. Held, that this provision was a penalty, and the company in default should be relieved on payment of the balance of the purchase price and interest.

Taking the language of the agreement under consideration entirely apart from the light thrown upon it by the testimony, therefore, it does not show any intention of the parties to make time essential; and there is nothing in the evidence tending to a different conclusion. It is true the defendant Supplee wrote a letter inquiring whether the deed was ready to be signed, on September 10th, and Sylvester replied that it ought to be executed before the expiration of sixty days; but, aside from this no communication passed between the parties upon the subject, till after the expiration of the time, and then the defendant Born, in his interview with Sylvester said nothing about the time limit till a dispute arose about the rent. Mr. Supplee raised no objection till Born told him not to convey. The evidence strongly tends to show that the making a time limit was an afterthought.

It was argued by counsel for the defendants that the agreement was a unilateral one; that it could not have been enforced by the defendants against the plaintiff, if he had made default, and therefore, equity will not enforce it against them. The general principle cited is undoubtedly correct. "There must be a mutuality of remedy. Both parties must have a right to a decree; otherwise, it would follow that the court would decree a specific performance when the party called upon to perform it might be in this situation, that if the agreement was disadvantageous to him he would be liable to the performance, and yet if advantageous he could not compel it:" Meason v. Kaine, 63 Pa. 340, citing Bodine v. Glading, 21 Pa. 50. It is

difficult to see, however, why the defendants would not have been as fully entitled to ask a specific performance in case of the plaintiff's default, if the test heretofore quoted from Pomeroy is the correct one, if the contract of purchase and sale was complete at the date of the execution of the agreement. It is true that the plaintiff at no time signed the agreement, exhibit A, but this fact would not preclude his being held to a specific performance of his contract.

If the technical requirements of the statute of frauds made it necessary that the plaintiff should have agreed to the memorandum in writing, they would have been met by the letter of September 11th, in which he refers to the agreement of August 9th; for the doctrine of such cases is that the correspondence and memorandum are to be taken together: Reed on the Statute of Frauds, § 346; Beckwith v. Talbot, 95 U. S. 292. Thus, in Campbell v. Denniston, 23 Upper C. C. P. 343, where the plaintiff, one Campbell, subscribed a memorandum, viz.: "I, John Campbell, agree to purchase from Messrs. Denniston & Hudspeth" (the defendants), and this memorandum was written by Hudspeth, one of the defendants, who also wrote to Denniston, the other defendant, that he had sold the lot to Campbell, the memoranda were held sufficient, citing: Gibson v. Holland, L. R. 1 C. P. 1; Caton v. Caton, L. R. 2 H. L. 143. But, even in the absence of such a letter, the plaintiff would have been liable, for the rule would seem to be settled by the more recent cases, that when the vendor, the party making or creating the estate, has executed the memorandum, which has been accepted by the vendee, the latter is bound, notwithstanding he has not signed it. The statute requires no written evidence of the engagement of the lessee or grantee: Tripp v. Bishop, 56 Pa. 424; Smith's App., 69 Pa. 480; Swisshelm v. Swissvale Laundry Co., 95 Pa. 370; Reed on the Statute of Frauds, § 367.

Nor is it true that equity will not enforce *any* unilateral contract. "There may be contracts, when the party has the option of purchasing without any obligation to pay, which nevertheless equity will enforce. In these and similar contracts the exact time of performing or paying is not the essential point, and a delay will not prevent their enforcement unless it is intentional, or so injurious to the party as to admit

of no adequate compensation:" Pomeroy on Specif. Perf., § 314; Townley v. Bedwell, 14 Ves. 591; Ely v. Beaumont, 5 S. & R. 124; Kerr v. Day, 14 Pa. 112.

In D'Arras v. Keyser, 26 Pa. 249, a lease for a year contained a clause that the lessee should have the "privilege of buying the premises for the sum of $2,575, at any time within twelve months from the date hereof," and "upon payment of the purchase money" the lessor would give the deed of conveyance. The lessee did not tender the price till the expiration of two years. The court, however, held that the lessee acquired an equitable right by the contract; that time was not essential, and that he was entitled to a specific performance. Per WOODWARD, J.: "Mere default in the payment of the money at a stipulated time admits in general of compensation, and hence time of payment is seldom treated as of the essence of real contracts." It would appear, therefore, that even if the agreement of August 9th, would bear the interpretation contended for, viz.: that it gave to the plaintiff a mere option to purchase, unless the non-payment of the price on the sixtieth day worked an injury to the defendants not to be compensated by payment of interest, it could still be specifically enforced.

It was further argued that it would be unjust and dangerous to vary from the written agreement of the parties; that if an extention of three days were allowed the defaulting party, as well might he ask for a longer time; but such a contingency has been provided for. In contracts where time is not of the essence of the contract per se, it can be made so at the option of either party, when the other delays in fulfilling the terms of the agreement: Pomeroy on Specif. Perf., § 304. It was only necessary for the defendants in the present case to give the plaintiff a fair and reasonable notice that a definite date on or after the sixtieth day would be insisted on for a settlement, to have made time of the essence of the contract, although not a part of it before. Since they did not do so, they have no right to complain of hardship.

It follows then that the contract between the parties to this case, was not one in which time was of the essence either by their express agreement or by construction of law. It remains to inquire, whether the circumstances were so changed in the

intermediate period between October 8th and the 11th, as to make the granting of a decree inequitable.

While the evidence undoubtedly shows that the value of real estate advanced materially in the neighborhood of the premises at Tenth and Hamilton streets after August 9th, this rise is attributable entirely to the purchases of the plaintiff's principal, the Finance Company of Pennsylvania, and not to any general demand by the public at large. Heavy prices were paid for neighboring properties as soon as it was discovered that this corporation was the purchaser. The master is not satisfied, however, that in the three days between October 8th and 11th, there was any substantial increase in the value in property in that neighborhood, and it is to these three days that the rise in the value must be traced: Taylor v. Longsworth, 14 Pet. 174; Tiernan v. Roland, 15 Pa. 438. No attempt was made to show any other change of circumstance. Therefore, unless there were laches on the part of the plaintiff, his prayer for relief should be granted.

It cannot be said that the plaintiff was as prompt in making settlement under the agreement as would have been expected, if any circumstances existed making promptitude a matter of much importance; but it would be a hard rule that would hold him guilty of inexcusable neglect, because in the pressure of business he had allowed three days to go by beyond the time fixed. If this delay worked hardship to the defendants, of course he would have to bear the responsibility; but no such results ensued. The defendant, Mr. Born, was in the occupancy of the premises, and under the terms of the agreement was to remain so till January 1st following. He has not shown that he had made any arrangements for the disposition of the purchase money, that were frustrated by its non-payment on October 8th; and the other defendant, Mr. Supplee, who, although he held the title, was so associated with Mr. Born as to permit himself to be governed by his wishes in the matter, has not offered any reasons to conclude that he would have been in any way inconvenienced by the delay.

On the whole case, therefore, the master is of opinion that the prayer of the bill should be granted, and the defendants required to perform specifically the agreement to make a good deed of the premises to the plaintiff, upon the payment of the balance of the purchase money.

Arguments.

Exceptions by the defendants to the report of the master, filed with and overruled by him, were afterwards renewed before the court. After argument, the court, ALLISON, P. J., without opinion filed, dismissed the exceptions, confirmed the report of the master, and entered a decree of specific performance as therein recommended. Thereupon the defendants took this appeal, specifying that the court erred:

1. In finding that by the contract of sale in question there was a mutual obligation between the parties.

2. In finding that time was not of the essence of the contract.

3. In not finding that the agreement between the parties was unilateral, and one which a court of equity would not enforce.

4. In not finding that by the agreement the parties had liquidated their damages in the event of its breach, and provided their own remedy therefor.

5. In decreeing the specific performance of the contract of August 9, 1888.

*Mr. Silas W. Pettit* (with him *Mr. John R. Read*), for the appellants:

1. The agreement sued on is substantially an option to purchase within sixty days. By not availing himself of his privilege, within that time, the plaintiff lost his right to insist upon a conveyance. The general rule under which courts of equity do not regard time as essential in contracts for the purchase and sale of real estate, is not intended to be applied so as in effect to substitute a new contract made by the court for that agreed to by the parties, but is confined to cases in which its application is necessary to prevent one party from taking an unconscionable advantage of the other; where no such reason exists, the rule has no application, and the court will leave the parties to their remedy at law: Benedict v. Lynch, 1 Johns. Ch. 370; Fisher v. Worrall, 5 W. & S. 478; Lloyd v. Collett, 4 Brown Ch. 469; Omerod v. Hardman, 5 Ves. 737.

2. Not only is the stipulation as to time a material part of every contract for the purchase of land, which the court cannot entirely disregard in any case, unless there are other circumstances involved rendering it inequitable to enforce it as

written, but it has frequently been held that equity will consider time as of the essence of the contract, when one party is bound and the other is not. Time is, ex vi termini, of the essence of an option contract such as this: 1 Fonbl. Eq., ch. 1, § 42; Story's Eq. Jur., § 776; Hopewell v. Knight, 1 Y. & C. 415; Westerman v. Means, 12 Pa. 97; Bodine v. Glading, 21 Pa. 50; Meason v. Kaine, 63 Pa. 335; Fry on Specif. Perf., § 733; Kerr v. Purdy, 51 N. Y. 629; Maughlin v. Perry, 35 Md. 352; Jones v. Noble, 3 Bush. (Ky.) 694; Maguffin v. Holt, 1 Duv. (Ky.) 95; Potts v. Whitehead, 5 C. E. Greene 55; Brooks v. Garrod, 2 De G. & J. 62; Lord Raneleigh v. Melton, 2 Drew & Sm. 278.

3. In the case in hand, it will be seen that on October 10, 1888, Supplee had no remedy whatever against Sylvester, for his only cause of action was a money demand. In Pennsylvania, equity will not enforce specific performance in favor of a vendor against a vendee, where only money can be recovered: Kauffman's App., 55 Pa. 383; Dech's App., 57 Pa. 467. At law, he was equally remediless. Being in possession, he could not bring ejectment. In a suit on the contract, his measure of damages would be, at the utmost, any depreciation in the value of the property, and against that liability Sylvester was protected by the stipulation making the nominal sum deposited "liquidated damages." As Sylvester could have been compelled neither to take the property nor to pay damages for not taking it, it follows that he cannot compel its conveyance.

*Mr. John G. Johnson* (with him *Mr. Frank R. Prichard*), for the appellee:

1. It is not the rule that in equity the time limit stated in a contract will govern, unless equitable ground is shown to avoid it. On the contrary, the rule is exactly the reverse, and in equity time is prima facie not essential, and will not be regarded unless special reasons are shown for its enforcement: Fry on Specif. Perf., § 1042; Parkin v. Thorold, 16 Beav. 59; Remington v. Irwin, 14 Pa. 143; Day v. Hunt, 112 N. Y. 191; Butler v. Archer, 76 Iowa 551. These authorities clearly show that if the defendant in the bill wishes to avail himself of a time limit in the contract, the burden is on him to show that the stipulation is not a mere formal one, the breach of

which may be compensated by interest, but that there are equitable reasons for holding the plaintiff to a strict compliance with its terms.

2. The question on which side the burden of showing equity rests, is, however, not of much importance in the present case, since established and undisputed facts render it clearly most inequitable to forfeit the plaintiff's right because of the three days' delay. The actions of the parties clearly show that neither of them understood time to be of the essence of the contract. It was treated as being in force three days after the limit had expired, and it was only when a collateral dispute arose that the vendor attempted to enforce the time clause. The vendor's conduct in failing to insist upon a settlement within the specified time, and in subsequently agreeing upon a future day for the settlement, was of itself a waiver of the time limit: Fry on Specif. Perf., § 1090. At all events, equity will not allow the time clause to defeat the plaintiff, in the circumstances: Remington v. Irwin, 14 Pa. 143.

3. It is difficult to treat the latter part of the argument for the appellants seriously. This was neither a verbal sale, nor a unilateral contract, nor an option. It was a binding agreement in writing, signed by the vendor and delivered to and accepted by the vendee. Courts of equity have always enforced specific performance of contracts of sale signed by the vendor alone: Palmer v. Scott, 5 Russ. & M. 391. Even where it is doubtful whether the vendee is bound also, the filing of the bill is considered an acceptance on his part which renders the contract mutual: Woodruff v. Woodruff, 44 N. J. Eq. 349; Fry on Specif. Perf., § 291. The argument that as the vendor cannot go into equity where his right is solely to receive the purchase money, therefore the vendee cannot do so either, would logically require that the vendee be refused specific performance in every case of a sale for a cash price, and it confounds mutuality of remedy with mutuality of form of remedy. Moreover, the insertion in the contract of a provision for a penalty or for liquidated damages does not prevent specific performance: Fry on Specif. Perf., § 116.

PER CURIAM:

The undisputed facts of this case, clearly stated in the report

of the learned master, justly entitled the plaintiff below to the decree of specific performance from which this appeal was taken. Neither of the specifications of error is sustained.

> Decree affirmed, and appeal dismissed, at the costs of appellants.

OPINION CONCURRING, MR. JUSTICE MITCHELL:

The agreement was entirely one sided, as it tied up the appellants' title, and yet allowed the appellee to repudiate the purchase without further liability than the mere forfeiture of the $50 deposit money. I am of opinion that time is of the essence of such a contract, and that a purchaser ought not to be permitted to enforce it in equity after the stipulated period.

The evidence in this case, however, shows that appellant waived the limitation as to time, and that his subsequent refusal to convey was an after-thought growing out of a dispute on another matter. On this ground, I concur in affirming the decree.