42 N.J. Super. 514 (1956)
127 A.2d 204
VINCENT J. FINN AND CATHERINE T. FINN, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
PHILIP GLICK AND KURT ROSTAN, TRADING AS GLICK & ROSTAN, AND GEORGE TEMPLE AND MRS. GEORGE TEMPLE, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 19, 1956.
Decided November 29, 1956.
*515 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Wilfred B. Wolcott argued the cause for plaintiffs-respondents (Mr. Albert G. Driver, on the brief).
Mr. George A. Streitz argued the cause for defendants-appellants.
*516 The opinion of the court was delivered by CLAPP, S.J.A.D.
Defendants, Philip Glick and Kurt Rostan, trading as Glick & Rostan, and Mr. and Mrs. George Temple, appeal from a judgment entered in the Chancery Division by the Hon. Vincent S. Haneman, granting plaintiffs, Vincent J. Finn and Catherine T. Finn, his wife, specific performance of a contract.
In February 1951 Glick & Rostan and plaintiffs signed the contract dating it May 14, 1950. By its terms Glick & Rostan agreed to sell to plaintiffs 2.13 acres of farm land in Elk Township, Gloucester County, for $530, payable in installments at the rate of $10 a month. The monthly payments were to be applied first against interest at 6% and the balance against principal. Plaintiffs also were to pay the taxes. In May 1950 the first $10 had been paid by plaintiffs and they had thereupon entered into possession of the property. Nine months later, namely in February 1951, when they were notified that the contract had been "made up," they paid another $10.
We shall assume, as did the Chancery Division, that in connection with each $10 payment time was made of the essence, although the pertinent terms of the contract, which follow, indicate that the matter was stated rather unprecisely:
"Settlement is to take place at office of Glick & Rostan, Clayton, N.J. when the principal has been paid in full as outlined below, which time is of the essence of this agreement * * *
* * * payments of $10.00 to be made each and every month hereafter until the principal has been paid in full * * *
In the event of the Buyer not making settlement in accordance with the terms hereof the payment or payments made on account shall, at the Seller's option, be forfeited as liquidated damages for the failure of the Buyer to settle; or be applied on account of the purchase price."
Plaintiffs cleared the land of brush and have farmed it from May 14, 1950 to the present time. However, payments of the installments of $10 each were made very irregularly. None was made between August 2, 1951 and January 4, 1952, a period of five months; nor between May 15, 1952 and November 10, 1952, a period of six months; nor between *517 March 31, 1953 and August 15, 1953, a period of four and a half months. In May 1953 Glick & Rostan were dissolved, and title to the property was conveyed to Mr. Rostan. On July 14, 1953 he wrote plaintiffs threatening them with a forfeiture of all payments and all rights under the contract unless by August 17, 1953, 34 days later, they paid $195, allegedly "the full balance due." The letter has reference, however, not to the "full balance" due on the $530 (which, including interest, amounted at the time to over $400), but to the arrearages in the monthly installments. In other words, no attempt was made to accelerate the payment of the balance due. On August 15, 1953, in response to the letter, plaintiffs paid $120  that is, only a part of the arrearages.
Three months later plaintiffs paid $15, and then made no further payments again until August 2, 1954, nine months later. On June 23, 1954 Mr. Rostan wrote another letter, precisely similar in form, threatening forfeiture unless plaintiffs paid the then "full balance" of $175 by July 24, 1954, 31 days later. This again has reference to the arrearages in the monthly installments (to be precise about it, these arrearages seem then to have amounted to $170). On August 2, 1954, in response to the letter, plaintiffs paid only $24.56, and a month later $40. Then there were no payments for six months, namely, until March 11, 1955, when $20 was paid; two months later another $10 was paid. Thereafter and for a period of eight months following May 9, 1955 and until the start of this action, no payments were made.
On November 23, 1955 Mr. Rostan wrote a third letter, precisely similar in form to the two above mentioned, stating that unless the full balance of $229.70 was paid 34 days later, namely, on December 26, 1955, the payments made and all rights under the contract would be forfeited. This letter has reference to the entire unpaid principal (as well as interest), all of which was due. In response to the letter and on or about December 27, 1955 Mrs. Finn wrote a note to Mr. Rostan's bookkeeper offering to start paying *518 on January 6, 1956 and to keep paying until she made payment in full. However, on or about January 5, 1956 Mr. Rostan and the Temples had come to an agreement under which he agreed to sell the property to them for $700; and on January 17, 1956 he delivered to them a deed for the same. On January 16, 1956 Mrs. Finn left $17 for Mr. Rostan at his office, and on January 24, 1956 Mr. Finn called at the office with $300 and offered to pay the balance due; but these last tenders were refused.
The Temples had some notice of plaintiffs' rights in the land and in any event now concede in effect that their claim stands or falls, depending on Mr. Rostan's rights on January 17, 1956 when he gave them the deed.
As above stated, the judgment below granted plaintiffs specific performance. It allowed them 60 days from June 5, 1956, the date of the court's oral conclusions, within which to pay the balance due. If the balance was not paid by that time, then as stated in the court's conclusions, plaintiffs' interest in the land was to be forfeited.
Counsel have briefed the questions thoroughly and are largely in accord as to the law, but not as to its application to the facts. Though parties to a contract may, by explicit provision therein, make time of the essence, they may nevertheless later waive that provision by their conduct. However, in such a case time may again be made of the essence by either party on the giving of reasonable notice to that effect. Bommelyn v. Moss, 123 N.J. Eq. 236 (E. & A. 1938); Earlin v. Mors, 1 N.J. 336, 340 (1949); Restatement, Contracts, § 311. It has been held in that regard that the time given in that notice must bear a reasonable relation to the time elapsed. Paradiso v. Mazejy, 3 N.J. 110 (1949); Orange Society of New Jerusalem v. Konski, 94 N.J. Eq. 632, 636 (Ch. 1923), affirmed 95 N.J. Eq. 254 (E. & A. 1923). In the typical case one is concerned with three points of time: (1) the time originally fixed for performance; (2) the time the notice is given; and (3) the new deadline fixed by the notice. When it is said that the time afforded between points 2 and 3 must bear a *519 reasonable relation to that which has elapsed between points 1 and 2, it is not meant, of course, that the matter can be resolved through the application of any mathematical formula.
Here, if one goes back to the letter of June 23, 1954, one may properly say that an attempt had been made by that letter to reinstate the provision of the contract making time of the essence. The threat of a forfeiture is some evidence of such an intent. Cf. Sylvester v. Born, 132 Pa. 467, 19 A. 337, 338 (Sup. Ct. 1890); Corbin Contracts, § 754 (1951). However, even if we assume that the provision was at that point reinstated, it clearly had been waived again during the months preceding the letter of November 23, 1955. The case then comes down to this, namely, whether this last letter constitutes reasonable and, more than that, adequate notice to the plaintiffs that time was being made of the essence, thus enabling Mr. Rostan to declare a forfeiture 43 days after the letter was mailed and, thereupon, to sell the property to the Temples (or in any event, enabling him to declare a forfeiture 55 days after the letter and at that point to deliver a deed and convey to the Temples title to the property).
The determination of such a question of course turns on the circumstances. Among the important circumstances here were the two prior letters threatening forfeiture, the first of which resulted in a payment by the plaintiffs (32 days after the letter was sent) of $120 out of $190 demanded, and the second of which resulted in a payment (40 days after it was sent, and 9 days after the deadline set in the letter) merely of $24.56 out of $175 demanded. In fact, according to the testimony, there were "numerous" letters of demand made by Mr. Rostan on the plaintiffs. However, in addition to the letters, there is a whole train of circumstances to be taken into account: the nine months' tardiness of Glick & Rostan in writing up the contract in the first place; the gross haphazardness of the payments over the years, all of which were accepted; the smallness of the amount of each installment, namely $10; the fact *520 that by 1955 plaintiffs had to a very substantial extent paid off their obligation and therefore, if they were compelled to forfeit these payments, the forfeiture percentagewise would be large (3 Corbin, Contracts, 822 (1951)); the fact that Mr. Rostan did not prepare a deed or apparently expect payment at 10:00 A.M. on December 26, 1955, the deadline fixed; Mr. Rostan's probable awareness that the people with whom he was dealing were not of substantial means (he in all likelihood was aware of this, for the Chancery Division, not without reason, itself found that plaintiffs were persons of limited means); the comparatively short period between December 26, 1955 (the date fixed in his letter of November 23, 1955 for the making of full payment) and January 5, 1956, the date of his agreement with the Temples. All these matters must be reckoned with in order to determine whether the buyers had reasonable and adequate notice  that is, whether they were sufficiently apprised by Mr. Rostan's letter of November 23, 1955 that he really meant business and now proposed, without further forbearance, to require them to forfeit all their payments totalling $424.56 at this time. The case is a continuing picture of a multitude of defaults by the buyer and, on the other hand, of tolerance by the seller  a far more flagrant situation than that presented in Wachung, etc., Co. v. Llewellyn, etc., Corp., 96 N.J. Eq. 498, 500 (Ch. 1924). We conclude that not only was the notice too short under all the circumstances, but the very manner of giving it  namely, by a letter which had now become a form little heeded by the parties and which plaintiffs would hardly regard as inexorable  did not adequately and fairly bring home to them that this was truly their last chance and that their payments on account would all be forfeited if they did not pay the balance before the deadline now fixed.
Defendants claim that specific performance is only awarded to a party to a contract who has shown himself to be prompt and ready to perform it. Meidling v. Trefz, 48 N.J. Eq. 638, 644 (E. & A. 1891). However, under *521 the circumstances here, in view of Mr. Rostan's repeated waivers, plaintiffs' delays should not disentitle them to the redress they sought. Cf. Bommelyn v. Moss, supra.
We agree with Judge Haneman that equity and good conscience called for the judgment he entered below.
Affirmed.