# Bodine *versus* Glading.

1. To entitle a party to a decree for specific performance, the contract must be mutual; both parties must have a right to compel specific performance.

2. Real estate was sold at public auction. By the terms of sale, the title was to be undoubted, the purchase-money to be paid within fifteen days from the sale, or the property might be sold at the risk and expense of the purchaser.

On the part of the purchaser objection was made to complying on account of a defect in the acknowledgment, by a married woman, of one of the deeds, through which the title was derived. Above two months after the sale, in reply to a letter giving information of the death of the feme covert *before* the sale, and requesting performance, the agent of the vendee gave notice of the refusal of the vendee to comply. The vendee subsequently engaged in business requiring considerable capital. The bill of the vendor asking for specific performance was subsequently filed, and afterwards, before a master, satisfactory evidence was exhibited of the death, *previous to the sale,* of the feme covert whose acknowledgment was alleged to be defective.

It was *Held,* that as the vendor was not bound *to convey* after the expiration of the fifteen days fixed for payment of the purchase-money by the conditions of sale, he was not entitled to a decree for specific performance.

3. As to the materiality of *time,* see this case.

APPEAL from the decree of the Common Pleas of *Philadelphia county,* overruling exceptions to a master's report as to the time satisfactory evidence of title was exhibited, and dismissing a bill asking for specific performance of a contract of sale of real estate.

On the 20th June, 1850, John A. Stewart assigned to E. D. Tarr all his estate, including the premises in question, for the benefit of creditors. The assignee exposed the premises to sale, at auction, on the 10th April, 1851. The printed advertisement of the premises contained the words, " Title undoubted, terms at sale." The terms declared at the sale were " cash to be paid within fifteen days from sale, or the property may be resold at the risk and expense of the purchaser." The defendant, Glading, purchased the premises at the sale for the sum of $9300; and in a day or two after the sale, employed a conveyancer, to examine the title. In the chain of title was a deed from Benjamin Johnson and wife, to Chamberlain, dated May 18, 1802.

[Bodine v. Glading.]

This deed was acknowledged by Johnson alone, before the Mayor of *Philadelphia*, on the day it bears date, and recorded July 13, 1802.   The acknowledgment by his wife was before a justice of peace *of Massachusetts*, as follows :

"*Commonwealth of Massachusetts.—Essex, ss. June 10th*, 1802.—The above said Rachel Johnson personally appeared before me, and acknowledged the foregoing instrument to be her voluntary act.   Signed,

"JAMES GARDINER, *Justice of the Peace.*"

There was also a certificate, under the seal of that Commonwealth, that Gardiner was a justice of the peace.

On the part of the complainant it was alleged, that the acknowledgment was in conformity with the laws of Massachusetts; whilst on the part of the respondent it was alleged that there was no provision by the laws of Massachusetts for the *separate* examination of a married woman, in regard to the execution of a conveyance purporting to pass her interest in real estate.

The conveyancer considering the acknowledgment defective, a correspondence was had in relation to Mrs. Johnson, and a letter from Lynn (in Massachusetts), dated 6th mo. 23, 1851, was received, stating that Mrs. Johnson died in 1810 or '11, leaving no children.   On the 25th June, 1851, this letter was enclosed to the conveyancer; the expectation expressed that Glading would take the property, otherwise it would be sold at his risk and cost, and offering to put the evidence of the death *in legal form*.   On the 27th June the conveyancer replied that the objection was not removed, and as the time for the completion of the title had elapsed, Glading, as he had before expressed his determination not to keep the matter open, had given up the purchase.

On the 7th July the complainant's counsel, in writing, demanded specific performance.   In August, 1851, Glading engaged in business as a flour dealer, which, it was alleged by his counsel, required large advances upon consignments.   On 5th September, 1851, the bill in question by E. D. Tarr, as assignee of Stewart, was filed for a decree of specific performance.   Bodine was appointed assignee in the room of Tarr, who died during the pendency of the proceedings.

ALLISON, J., made a decree for the dismissal of the bill with costs.

It was assigned for error that the Court erred, 1. In overruling the exceptions to the Master's report.   2. In deciding that the title, as originally exhibited, was defective.   3. In deciding that the evidence exhibited in June, 1851, of the death of Mrs. Johnson, coupled with the offer to put that in legal form, did not from

[Bodine *v.* Glading.]

that time, as respects the defendant, remove the supposed defect. 4. In dismissing the bill. 5. In not decreeing specific performance of the contract mentioned in the pleadings. 6. In rejecting the deposition of John A. Stewart, the assignor, who had released all interest.

*McMurtrie,* for plaintiff in error.—It was contended that the title was perfect when the sale was made. That the deed was acknowledged so as to bar dower in Massachusetts. That by our Act of 1840, section 15, to such an acknowledgment the same effect is given, as if it had been taken before a justice in Pennsylvania. Also that the Act of 1851 cures all such defects in deeds recorded more than thirty years, as was the case here.

2. Time was not of the essence of the contract. *In Equity* the expiration of the time fixed is not a defence, except when it has been made essential by *express agreement,* or where from the circumstances of the case, such must have been *the intention of the parties:* 2 *Harris* 143, Remington *v.* Irvine; 3 *Harris* 429, Tiernan *v.* Roland; 2 *Penna. Rep.* 211.

When time is essential, it may be waived by the acts of the parties, (6 *Jurist* 725, Boyes *v.* Liddall; 4 *Y. & Coll.* 505, *Ex parte* Gardiner), and in this case the purchaser dealt with the contract as existing after the fifteen days had elapsed.

3. Where time is not essential, or being essential has been waived, the purchaser cannot abruptly rescind the contract for non-production of evidence of title. He must give notice of his intention, and allow what under the circumstances is a reasonable time: 1 *Hoff. Ch.* 139. *Hare* 158; 6 *Beav.* 124; 2 *Id.* 183; 3 *Harris* 429.

4. The vendor's threat to sell did not preclude him from having the contract enforced in equity: 4 *Shepley* 164; 3 *Gilman* 626; *Dart. on Vendors* 516; 14 *Jurist* 255; *Daniel Ch. Pr.* vol. 2, p. 961.

The purchaser did not engage in the flour business till August, 1851; not till after he had received notice of the intention of the vendor to proceed for specific performance.

*G. W. Biddle* and *Cadwalader,* for the respondent.—It was contended, as before stated, that the laws of Massachusetts did not provide for the separate examination of a married woman in regard to her execution of a conveyance purporting to pass her interest in real estate: 5 *Mass.* 449–454–463. It was also contended that the objection on account of the certificate as to her acknowledgment, was operative till the production in April, 1852, of the proof of her death; and that it was acquiesced in by the assignee at least as late as June, 1851. It was further contended

[Bodine *v.* Glading.]

that where the acknowledgment was, as in this case, taken before a justice *in another state*, who was not presumed to have been acquainted with our law and therefore not presumed to comply with its requirements, the defect was not cured by our Acts of 1840 and 1850.

2. It was contended that as by the terms of sale the vendor had the right *to re-sell*, time was, in this case, of the essence of the contract. Also that Glading, after waiting a reasonable time, declared his intention of abandoning the contract on account of the defect, and of using his money in another way; and that this intention was communicated to the plaintiff's agent; and he has entered into business. 3. The letters referred to were not sworn to. 4. The vendor's declaration of his purpose to sell at the purchaser's risk, under the clause in the conditions of sale, ought in equity to preclude him from enforcing specifically the contract in question.

The opinion of the Court was delivered by

LEWIS, J.—This is a bill for the specific performance of a contract for the purchase of real estate, sold at auction, under a written condition of the sale, that "the cash is to be paid within fifteen days from sale, or the property may be resold at the risk and expense of the purchaser." The sale was made on the 10th April, 1851, and the title was to be "undoubted." Objections were made to the title on the ground of the defective acknowledgment by the wife of a person through whom the title was derived. This objection was afterwards removed by producing evidence of her death. On the 25th June, 1851, the vendor addressed a letter to the vendee, requesting the latter to comply with the terms of sale, and take the property, and stating that otherwise he would "sell it at the risk and cost of the purchaser." This letter was answered on the 27th June, 1851, by one from the purchaser, in which he stated that he "had given up the purchase on account of the defect above alluded to, and must decline holding himself, at this late day, in any way responsible." The Court below dismissed the bill with costs.

To entitle a party to a decree for specific performance, the contract must be mutual. Both parties must, by the agreement, have a right to compel specific performance; otherwise it would follow, that the Court would decree a specific performance where the party called upon to perform it might be in this situation, that if the agreement was disadvantageous to him he would be liable to the performance, and yet if advantageous to him, he could not compel a performance: 1 *Sch. & Lefr.* 18; 2 *Com. Dig.* 411; *Newlin on Contracts* 153. In the case before us, it may be doubted whether the vendee, after the expiration of the time for the payment of the money, had the usual rights of a vendee to enforce specific perform-

[Bodine *v.* Glading.]

ance.   In general, *time* is not of the essence of a contract, according to the rule in equity.   But can it be supposed that either party intended to be bound by this rule, and to have his hands tied, and the estate locked up for an indefinite period of time, to be measured by the conscience of the chancellor?   See 1 *John. Ch. R.* 379; *Fonbl. Eq.* 48, *note.*   The law is necessarily modified by the usages of the people; and when it ceases to keep pace with them, it fails of its object, and produces more injury than good.   In this age of enterprise, business of every kind moves not only with railroad speed, but, in many instances, with lightning velocity.   Commercial transactions would be greatly embarrassed, and the grossest injustice would be done if the people are prohibited from making their own contracts.

In this case it is not altogether clear that either party had in view any other consequence of a breach of the contract than a resale, and the payment of the difference and the expense of the resale.   If the contract was mutual, either party had a right to insist upon a resale after the breach.   If the vendor alone had that right, the want of mutuality would seem to preclude him from asking specific performance.   Where the contract itself has assessed the damages which the party is to pay upon his doing or omitting to do a particular act which he has covenanted to abstain from or perform, equity will not interfere either to prevent or to enforce the act in question, or to restrain the recovery of the damages: 2 *Vern.* 119; *Fonbl. Treat. Eq.* 142, *note;* 2 *Bro. P. C.* 436; *Newlin on Contr.* 313.   What is the difference between an agreement assessing the damages and one providing the means of assessing them?   The foundation of the chancery jurisdiction in decreeing specific performance is the supposed impossibility of doing justice to the parties by the award of damages for the breach.   But where the parties themselves have agreed upon the compensation for the breach, or, what is the same thing in principle, have provided the means by which it may be ascertained, the necessity for the interference of the chancellor no longer exists, and his jurisdiction falls to the ground.   Without positively affirming these principles, it is sufficient to say, that the decree of the Court under the circumstances of this case is correct, and must therefore be affirmed.

Decree affirmed.