# The Du Bois Deposit Bank, Assignee of Esther Maginnis, who was Assignee of Grier Brothers, *v.* Emanuel Kuntz and Catharine Kuntz, Appellant.

*Married woman—Mortgage—Security for husband's debt.*

A married woman may execute a mortgage of her real estate to secure a debt of her husband.

*Fraudulent representations—Mortgage—Scire facias—Married woman.*

On a scire facias sur mortgage where one of the defendants, a married woman, testifies that she was induced to sign the mortgage by fraudulent representations made to her by a person who declared himself to be the agent of the mortgagee, and there is no other testimony in the case to show that such person was the agent of the mortgagee, or to connect the mortgagee in any way with the fraud, it is proper to direct the jury to find a verdict for the plaintiff.

Argued April 24, 1896.   Appeal, No. 266, Jan. T., 1896, by Catharine Kuntz, one of the defendants, from judgment of C. P. Clearfield Co., Sept. T., 1893, No. 366, on verdict for plaintiff. Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Scire facias sur mortgage.    Before GORDON, P. J.

This scire facias was brought July 13, 1893, upon a mortgage given by Emanuel Kuntz and Catharine his wife, to Grier Brothers,—dated and executed on Saturday, November 29, 1890, and recorded December 1, 1890,—on house and lot of the wife in Du Bois, to secure payment of $1,530, within three years, with interest payable annually from the date thereof.    On March 21, 1891, Grier Brothers assigned the same to Esther Maginnis.    On July 23, 1892, she assigned it to Du Bois Deposit Bank.    The interest for the first year was paid about the time it was due.    The mortgage was given to secure debts of Emanuel Kuntz due to Grier Brothers.    It covered three matters ; first, judgment No. 137, May term, 1889, Andrew Pentz, Jr., Assignee, v. Emanuel Kuntz, for 233.63 ; second, a note of Emanuel Kuntz, dated March 15, 1889, for $961.61 at four months after date ; third, the one half of the book account of Hamer & Kuntz.

The court charged in part as follows :

The defense is made principally upon the part of Catharine Kuntz, one of the mortgagors, who claims to be the legal owner of the mortgaged premises, and it is attempted to be made out almost entirely upon her own testimony to the effect that a fraud was practiced upon her, by or through John H. Bierly, who she testifies claimed on the 29th of November, 1890, the date the mortgage was executed, that he was acting for and in behalf of Grier Brothers ; that she had no conversation with Grier Brothers, but communicated with them through said Bierly, who came to her, as from them, with their message or communication, and returned again to them with her replies. She testifies that Grier Brothers sent word to her by Bierly that, unless she gave a mortgage upon her property to secure their claims against her husband, they would proceed with a criminal prosecution against him, and would desist from it if she acceded to their request ; that he (Bierly) further agreed, if she would give the mortgage, she should have and be permitted to collect a certain promissory note belonging to his (Bierly's) wife in the hands and possession of Allison O. Smith, Esq., an attorney of this bar, for $7,500, which was protested and collectible ; that the parties to it were responsible and that out of the proceeds therefrom she was to pay off the mortgage, pay a certain

indebtedness of several thousand dollars due from him (Bierly) to her husband, Emanuel Kuntz, and for which note he then and there gave her an order on said A. O. Smith; that to avoid the criminal prosecution and relying upon the agreement, by which she was to obtain the note, she consented to give the mortgage, and executed the same; that her subsequent efforts to secure the $7,500 note was unavailing, the custodian under instructions from Bierly refusing to give it to her without Mrs. Bierly's consent, and that instead of it being given to her it was given to said Bierly; that in short she was cheated and defrauded by said Bierly, acting for and in behalf of Grier Brothers, and should not now be called upon to pay the mortgage debt.

On the other hand, James Grier and George E. Grier, the only two members of the firm of Grier Brothers residing in or who were in Du Bois on the 29th day of November, 1890, when it is alleged this mortgage was given, deny all knowledge of any fraud or imposition practiced upon the mortgagors; they testify that Bierly had no authority to act for them and did not in fact do so, that he purported in the two conversations had with James Grier to be acting for Mr. and Mrs. Kuntz. James Grier testified that when Bierly came to him he demanded payment of their entire claim, consisting of book account and note against the husband and a claim against Hamer & Kuntz; that upon Bierly's second visit, he (Bierly) represented that Mrs. Kuntz objected to paying Hamer's debts, and he thereupon consented to throw off one half of that claim if the balance was paid, and that nothing was said that day about a mortgage. He testifies further that in a day or two their attorney, Mr. Cole, came to see them about a mortgage, which he agreed to accept, and that subsequently the matter was adjusted by mortgage through Mr. Cole, and included the claims mentioned and the Pentz judgment.

Outside of the testimony of Bierly on cross-examination there is nothing in the evidence showing any participation or knowledge on the part of Grier Brothers of any fraud or imposition upon Mrs. Kuntz. They had absolutely nothing to do with either Mr. or Mrs. Kuntz in the transaction, so far as their testimony in the case is concerned. The only connection they had with it was they got the benefit of the giving of the mort-

gage, and the only testimony connecting them with the nego-
tiations is that of Bierly, who on his examination in chief, called
by the plaintiff in rebuttal, testified that he came to Du Bois
to assist in adjusting certain differences at the request and ex-
pense of Emanuel Kuntz, the husband, and that neither of the
Grier Brothers said anything to him about the criminal prose-
cution on the mortgage. On cross-examination, however, he
contradicted himself flatly, admitted that James Grier had talked
of the mortgage and the criminal prosecution.

The testimony of Mrs. Kuntz, as well as that of Mr. Bierly,
is long, and we don't pretend to give you in detail what they
swore to. It cannot be denied that there is evidence tending
to establish the fact that Mrs. Kuntz was imposed upon by
Mr. Bierly, and the evidence shows him to be a man lacking in
integrity and truthfulness. But the question remains, is the
testimony such as to make out such a case of fraud as to avoid
and annul the mortgage and entitle the defendants to a verdict.
As we look at it, the evidence establishes the following:

1. That in what Mrs. Kuntz did she acted voluntarily, with-
out any coercion, compulsion or restraint on the part of anybody.
She is an intelligent woman, experienced and capable of taking
care of herself and of her interests.

2. That she was well acquainted with Mr. Bierly, who had
been in business with her husband, and was his intimate friend.

3. That as far back as September 30, 1890, she was dicker-
ing with Bierly for this same $7,500 note and got an order
from him on the custodian of it for it, with the understanding
that out of the proceeds she should pay substantially the same
claims for which the mortgage was given (not however includ-
ing the Pentz judgment), and including the debt of Bierly to
Kuntz, and the evidence bears out the allegation that in thus
endeavoring to get possession of the Mrs. Bierly note, both in
September and in November, 1890, she was acting in the
interest of her husband, if not of herself, and with a view of
securing the payment of debts due by and to him.   ✿

4. That had the $7,500 note been produced and collected as
contemplated there would have been no allegation of fraud
practiced upon her, and that her present complaint is on
account of Bierly's subsequent conduct and her failure to secure
the note in question.

5. That Grier Brothers had nothing to do with any represen-tations made to her or agreements with her, and that if she was imposed upon, as claimed, they had no part in or knowledge of it.

6. That as to the criminal prosecution referred to, there is not sufficient evidence to establish as a fact that any felony or other crime was committed, neither is there any evidence of any threats of prosecution or anything said about it by Grier Brothers, such as could affect the validity of the mortgage or the plaintiff's right to recover in this case.

We therefore say to you, as a matter of law, that the defense set up in this case is not sufficient and that the plaintiff is en-titled to recover. Not only has the defense failed to make out a case of fraud such as to avoid this mortgage, but, if it existed, they have failed to connect Grier Brothers with it. In the admission of testimony we opened the door wide, against objec-tion from plaintiff's counsel, to the admission of the evidence which defendants offered to establish their case, upon condition that it should not affect the plaintiff unless Grier Brothers were connected with it, and, with every opportunity thus afforded them, their proof in our opinion does not measure up to the requirements of the law.

Verdict and judgment for plaintiff for $1,756.44. Defendant appealed.

*Error assigned* was in giving binding instructions for plaintiff.

*J. B. McEnally, D. W. McCurdy* with him, for appellant.—Mrs. Catharine Kuntz was a married woman, and the mortgage as against her is subject to the limitation that she cannot become guarantor or surety for another.

The threat of a criminal prosecution against Emanuel Kuntz was the principal means used to compel Mrs. Kuntz to secure this judgment as well as other debts of Kuntz's by means of the mortgage. This rendered the mortgage invalid: Union Nat. Bank of Souderton v. Moyer, 1 Dist. Rep. 432; First Nat. Bank v. Schofield, 168 Pa. 407; Act of June 3, 1887, P. L. 332, sec. 2; Act of June 8, 1893, P. L. 344, sec. 4; Jones v. Lewis, 148 Pa. 234.

*W. C. Pentz, George A. Jenks* and *Herbert A. Moore* with him, for appellee.—The fact of agency cannot be proved by declarations of the alleged agent, nor by his acts done without the knowledge or authority of the principal: Whiting v. Lake, 91 Pa. 349; Refining & Storage Co. v. Bushnell, 88 Pa. 89; Telephone Co. v. Thompson, 112 Pa. 118.

There must be evidence sufficient to raise questions of fact, and whether there is such evidence is for the court to decide: Holden v. R. R., 169 Pa. 1.

Fraud is not to be presumed but must be proved as well as any other fact: Mead v. Conroe, 113 Pa. 220.

By reason of the coveture of appellant she could not shift the burden of this proof: Milligan v. Phipps, 153 Pa. 208; Abell v. Chaffee, 154 Pa. 254; Adams v. Gray, 154 Pa. 258; Spotts's Est., 156 Pa. 281; Gockley v. Miller, 162 Pa. 271.

PER CURIAM, May 11, 1896:

In view of the practically undisputed evidence in support of the plaintiff's claim, the learned trial judge was clearly right in withdrawing the case from the consideration of the jury and directing them to render a verdict in favor of the bank for the amount of the mortgage debt with interest from November 29, 1891. There is no question in the case that requires discussion. The assignments of error are both dismissed, and the judgment is affirmed.