Henry H. Kuhn, Trustee for Creditors of Christ Mintmier & Thomas Ogilvie, *v.* Ada J. Ogilvie, Appellant, and Thomas Ogilvie.

*Married women—Mortgage—Act of June 8, 1893.*

Although the act of June 8, 1893, P. L. 344, provides that a married woman " may not become accommodation indorser, maker, guarantor or surety for another," yet she may mortgage her estate as security for her husband's debt, including future advances to him, or for the debt of another person.

The general intent of the act of June 8, 1893, is so plainly an enlargement of a married woman's contractual capacity, that nothing less than explicit negative words should be construed as narrowing powers admittedly possessed before the passage of the act.

Argued Oct. 13, 1896. Appeal, No. 108, Oct. T., 1896, by defendant, from judgment of C. P. Cambria Co., March T., 1895, No. 578, for plaintiff, on trial by court without a jury.

Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Scire facias sur mortgage. Before the court with a jury.

The court found the facts to be as follows :

On March 1, 1894, Thomas Ogilvie and Ada J. Ogilvie executed in proper form a mortgage to Henry H. Kuhn " trustee for the creditors of ' Mintmier & Ogilvie ' and ' Ogilvie & Watkins.' " The mortgage recited the failure of said firms in business and that their creditors had agreed to accept fifty per cent of their respective claims in full, and that they (Mintmier & Ogilvie) had agreed to give promissory notes for the same, payable in three, six, and nine months, the payment of which notes to be secured by a trust mortgage to be given by Ada J. Ogilvie on real estate owned by her. The said mortgage further recites as follows : " And whereas the said Ada J. Ogilvie and Thomas Ogilvie, her husband, stand ready to mortgage the property of the said Ada J. Ogilvie, hereinafter described in pursuance of the foregoing agreement and subsequent verbal agreements between the said parties above mentioned to secure the payment of certain promissory notes given by said Thomas Ogilvie to his creditors in the full sum of Forty-two Hundred and Fifty-eight Dollars and Forty-four Cents (the amount due each creditor being set forth in the statement hereto annexed), according to the terms and tenure of said promissory notes." The defeasance clause in the mortgage reads as follows :

" Provided, Always nevertheless that if the said Thomas Ogilvie or Mintmier and Ogilvie, their heirs, executors, or administrators shall and do well and truly pay or cause to be paid unto the said several creditors aforementioned their respective claims and demands in the full and aggregate sum of Forty-two Hundred and Fifty-eight Dollars and Forty-four Cents, being the total amount of promissory notes for the security of which this mortgage is executed upon the days and times mentioned in said notes for the payment thereof and all costs, etc., then and from thenceforth this present indenture and the estate hereby granted shall cease and determine and become absolutely null and void," etc. The real estate covered by the mortgage was the property of Ada J. Ogilvie. The notes given for the

indebtedness of Mintmier & Ogilvie were signed by Thomas Ogilvie with the firm name ; the notes given for the indebtedness of " Ogilvie & Watkins " were signed by Thomas Ogilvie with his individual name. The firm of Mintmier & Ogilvie consisted of Christ Mintmier and Thomas Ogilvie, and the firm of Ogilvie & Watkins of Thomas Ogilvie and Lee W. Watkins. Thomas Ogilvie furnished all the capital that was put into the business of both firms.

The notes maturing in three and six months were paid by Thomas Ogilvie, and the notes due in nine months not being paid a writ of scire facias was sued out on the mortgage and after the suit was at issue the parties waived a jury trial and submitted the case to the court under the provisions of the act of 22d day of April, 1874.

The foregoing recital of facts may be considered as the findings of facts required to be filed by the court under the provisions of the above act of assembly.

The court entered judgment in favor of plaintiff.

*Error assigned* was entering judgment for plaintiff.

*R. E. Cresswell*, for appellant.—In view of all the evidence submitted, and the language of the mortgage itself, this is the contract of a married woman in the form of a mortgage on her separate estate to secure the promissory notes of another, and in view of all the facts and the mortgage itself, the execution of the mortgage did not extinguish the debts evidenced by the notes. There was no novation between Thomas Ogilvie's creditors and Ada J. Ogilvie, and there was no merger. The indebtedness on the notes was always distinctly separate from the indebtedness sought to be created by the mortgage ; then, if this is the case, the mortgage is collateral security to these notes, and we claim that if Mrs. Ogilvie can be held liable by this mortgage or contract of suretyship that she ought to be held if she was an indorser upon the notes, as it is exactly the same thing in effect; the whole transaction being a transparent device, adopted by the owners of the notes and the husband to evade the express purpose of the law to create by form a liability where by law none in fact existed : Nat. Bank v. Scofield, 168 Pa. 407 ; Real Est. Co. v. Roop, 132 Pa. 496 ; Patrick & Co. v. Smith, 165 Pa. 526.

*Donald E. Dufton*, with him *Henry H. Kuhn, M. D. Kittell* and *Alvin Evans*, for appellee.—We contend that the words accommodation indorser, maker, guarantor or surety, are to be taken in their technical and legal sense, and not in the general sense which counsel would attribute to them. . Whoever becomes security for the debt of another, or pledges property for its payment, is to a certain extent a guarantor or a surety, and if a married woman who pledges her real estate for the payment of her husband's debt is held to be a surety within the purview of the act, then the title to the same is misleading, and the act did not enlarge her powers, but forged new fetters, for this court has uniformly held that under previous acts she had that power : Du Bois Deposit Bank v. Kuntz, 175 Pa. 432.

OPINION BY MR. JUSTICE MITCHELL, November 9, 1896 :

A mortgage being in many respects treated as a mere security, though in form a conveyance, it might well have been held that a mortgage by a married woman to secure her husband's debt, is in substance a contract of suretyship which she was not, at common law, capable of making. But on the other hand, she has, under the law of Pennsylvania, the right of every owner to convey her estate, subject to certain conditions as to mode, etc., and as she could sell or mortgage and give the money immediately to her husband, there was no substantial reason why she should not subject her estate to a merely contingent liability for the same purpose. When the case of Hoover v. The Samaritan Society, 4 Whart. 445, came before this court, the latter argument prevailed, and it was held that a married woman could use a power of appointment to execute a mortgage as collateral to her husband's bond for money loaned to him.

This view has been steadfastly adhered to, and it is now the established rule that a married woman may mortgage her estate as security for her husband's debt, including future advances to him, or for the debt of any other person : Haffey v. Carey, 73 Pa. 431; Hagenbuch v. Phillips, 112 Pa. 284; Du Bois Deposit Bank v. Kuntz, 175 Pa. 432.

This being settled, the only question left open in the present case is whether the rule has been changed by the act of June 8, 1893, P. L. 344. It will be observed that the cases last cited were decided after the married woman's act of 1848, and it was

held that the capacity of a married woman to mortgage her estate was not affected by that act, the purpose of which was to restrict the husband's power and that of his creditors, not that of the wife. The act of 1893 is a further step in the same direction, and instead of contenting itself with restricting the power of the husband, it affirmatively enlarges the power of the wife. The first section provides for her control over her estate, including conveyance and mortgage of realty when her husband joins. The second section authorizes her to "make any contract in writing or otherwise, which is necessary, appropriate, convenient or advantageous to the exercise or enjoyment of the rights and powers granted by the foregoing section, but she may not become accommodation indorser, maker, guarantor or surety for another." It is upon this last clause that the argument for the appellant rests. It is clear however that this was a cautionary provision against too liberal a construction of the very large powers conferred by the first part of the section, a saving of the previously existing disability so far as it covered the particular class of contracts specified. The general intent of the act is so plainly in enlargement of her contractual capacity, that nothing less than explicit negative words should be construed as narrowing powers admittedly possessed before the passage of the act.

The case of Patrick v. Smith, 165 Pa. 526, arose under the act of 1887, and there is nothing in it in conflict with this view of the act of 1893. A wife indorsed her husband's note, which plaintiffs discounted and passed to her credit, and she immediately drew a check to her husband's order for the whole amount. At maturity the husband paid part of the note and the wife gave her note for the balance which plaintiffs discounted and she again drew her check to her husband's order for the proceeds. On this note she was sued. It was held that her action throughout was for the accommodation of her husband, and that the statute could not be evaded by such a "transparent device" to which the plaintiffs were party. Real Estate Co. v. Roop, 132 Pa. 496, also arose under the act of 1887, and the strict construction given there probably had much influence in the passage of the act of 1893, with enlarged grant of contractual capacity in express terms.

Judgment affirmed.