## Kile *v.* Kilner, Appellant.

*Married women—Promissory note—Principal and surety.*

A promissory note under seal was signed by a married man as principal and by another person designated as "bail." When the note became due the principal was ill and confined to his house. A renewal note was sent to him by the bank which held the original note, and he requested his wife to sign the renewal note. She complied with his request, signing her own name. After the death of her husband she sent the note to the bail who signed the note after the wife's signature again designating himself as "bail." The new note was accepted by the bank as payment of the old note, and the old note was surrendered to the wife. Upon maturity of the new note the bail was compelled to pay it, and thereupon brought suit against the widow. *Held,* that the widow was liable to the bail for the amount of the note.

Argued May 13, 1908. Appeal, No. 89, April T., 1908, by defendant, from judgment of C. P. Mercer Co., Jan. T., 1905, No. 304, on verdict for plaintiff in case of William Kile v. Harriet Kilner. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Assumpsit by a surety against a principal on a note under seal. Before WILLIAMS, P. J.

At the trial it appeared that the note was in the following form:

"$150.00                 . MERCER, PA., Feb'y 29, 1904.

"Four months after date we, or either of us, promise to pay to The Farmers' and Mechanics' National Bank, Mercer, Pa., one hundred fifty dollars.

"Value received.

"And in case of default of payment at maturity, an addi-

tional five per cent attorney's commission for collection of the same. And we hereby authorize and empower any attorney of any court of record within the United States or elsewhere to appear for us, and after one or more declarations filed, confess judgment against us in any court of record in the state of Pennsylvania or elsewhere, at any time either before or after this obligation falls due, for the above amount, together with the said five per cent attorney's fees, with costs of suits, release of errors, and without stay of execution; and for value received we jointly and severally do waive the right or benefit of any law of this or any state exempting property, real or personal, from sale; and if levy is made on land we jointly and severally do also waive the right of inquisition, and consent to the condemnation thereof, with full liberty to sell the same on fi. fa. with release of errors thereon.

        "$3.00                                    [L. s.]
"No. 64,680 F        HARRIET KILNER,        [L. s.]
"Due June 29        WILLIAM KILE, Bail,    [L. s.]"

It is indorsed on the back as follows:

                                "MERCER, PA., Nov. 9, 1904.
"For value received I hereby assign this note to William Kile without recourse in any event.
                                "R. C. KERR, Cash."

On the note was indorsed a warrant of attorney to confess judgment.

Other facts appear by the opinion of the Superior Court.

Verdict and judgment for plaintiff for $180.40. Defendant appealed

*Error assigned* amongst others was in entering judgment for plaintiff on the verdict.

*W. W. Moore,* with him *J. W. Bell,* for appellant.—All the authorities go to show that at law accepting of a security of equal degree, either from the debtor himself or from a stranger, at the instance of the debtor, is no extinguishment of the first debt: Oliphant v. Church, 19 Pa. 318; Brown v. Scott, 51 Pa.

357; Hunter v. Moul, 98 Pa. 13; Kearney v. Nat. Bank, 129 Pa. 577; Bixler v. Lesh, 6 Pa. Superior Ct. 459; Levan v. Wilten, 135 Pa. 61; Griffee v. Griffee, 173 Pa. 434; Berlin Iron Bridge Co. v. Bonta, 180 Pa. 448; Collins v. Busch, 191 Pa. 549.

The note in question in this case is void as to the defendant for want of consideration, it not being contended on the part of the plaintiff that there was any such consideration as is recognized in law as sufficient: Carpenter v. Bank, 106 Pa. 170; Rathfon v. Locher, 215 Pa. 571.

The holder of an accommodation note, pledged as collateral security for an antecedent debt, is not a purchaser for value, and the note in his hands may be impeached for fraud in its making or procurement: Cummings v. Boyd, 83 Pa. 372; Patrick & Co. v. Smith, 165 Pa. 526; Wiltbank v. Tobler, 181 Pa. 103; Harper v. O'Neil, 194 Pa. 141; Rathfon v. Locher, 215 Pa. 571; Weigle v. Mercer, 1 Pa. Superior Ct. 490; Bank v. Short, 15 Pa. Superior Ct. 64; Jaquett v. Allabaugh, 16 Pa. Superior Ct. 557.

*J. R. W. Baker*, for appellee.

OPINION BY BEAVER, J., July 15, 1908.

Kile, the use plaintiff here, was bail for the husband of the defendant upon a note under seal, in the Farmers' & Mechanics' National Bank, Mercer, Pennsylvania. About the time of its maturity a new note was sent to Kilner, the husband, who was at that time ill and in a nervous condition. He requested his wife to sign the note and send it to Kile for his signature. The wife signed her own name instead of that of her husband and, after his death, sent the note to Kile.

The special verdict of the jury finds certain facts important to be borne in mind, as follows: "We find that Harriet Kilner signed the note before the death of William Kilner. We decided William Kile signed the note after William Kilner's death, not knowing when Harriet Kilner signed it."

The bank, upon the presentation of the new note signed by the defendant and the use plaintiff, accepted it as payment of the old note and surrendered it to the defendant, stamping

it paid March 22, 1904. Upon the maturity of the note in controversy, it was paid by the plaintiff and assigned to him by the bank.. Judgment was entered thereon for his use against the defendant, and upon her application, after testimony and hearing, judgment was opened and she permitted to make defense.

At the trial the death of William Kile, the use plaintiff, was suggested and his heirs substituted.

The jury found for the plaintiff, and, upon motion for judgment n. o. v. upon the whole record, on the ground that the defendant was not liable, being a married woman at the time the note was signed by her, judgment was entered upon the verdict.

The question is as to the liability of the defendant, in view of her coverture, when the note was signed, it being contended by the plaintiff that, as between him and the defendant, she is liable, because he was bail for her, and signed the note as such after the death of the husband, without knowledge of the fact that the note had been signed by her prior to his death.

The facts attending the execution of the note by the defendant are contained in the testimony of her son and daughter, who were apparently the only persons present beside herself and her husband, when the subject was discussed. The testimony of William Kilner, the son, is as follows: "Q. Now, after taking this letter out of the box, from the Farmers' & Mechanics' Bank, and addressed to your father, what did you do with it? A. I took it down to the house and gave it to my mother. Q. Were there any other persons present when you delivered this letter to your mother? A. Yes, sir, quite a number in the kitchen there; eight or ten. My brother was there, and my sister was there, and another sister, Mrs. Adams now, and an aunt or two. Q. What did your mother do with the letter, after you handed it to her? A. She opened the letter and took it in to my father, and I followed her in; and he told her to take it out and sign it and take it down to Mr. Kile and he would sign it, and send it to the bank. Q. What did she take out of the envelope? A. A note for $150."

The daughter, Mrs. Rhoda Barr, says: "Q. Do you remember

of your brother William having brought a letter down to the house from the Farmers' & Mechanics' Bank addressed to your father? A. I do. Q. When he brought that letter to the house, to whom did he give it? A. To mother. Q. What did your mother do with it? A. She opened it and took it in to father and asked him what she should do with it, and he said it was a note for Mr. Kile and it would be all right for her to sign it and take it down to Mr. Kile, or give it to one of the boys and take it down, and Kile would sign it and it would be all right. Q. Did you see the note? A. I saw the piece of paper. Q. What was the form of the paper that you saw? A. Just a slip of paper. I knew it was a note from the form, but I didn't know the exact amount. Q. What did your mother do after your father had told her what you have stated? A. She took it to the kitchen and laid it on the table and signed it, and put it in the envelope and gave it to Charles and told him to take it down to Mr. Kile and have him sign it."

That Kile was the bail upon the note signed by the defendant is not, as we understand the testimony, denied. He signed it as bail and, having signed it after the death of William Kilner, he became thereby the bail of the defendant.

What the legal effect of the use of this note may have been, if nothing had been said in regard to its use and application, is not very important. As a matter of fact, the defendant, through her son Charles, used it in payment of the original note upon which her husband was principal and Kile, the use plaintiff here, the bail. The bank accepted it as payment, stamped the old note paid and sent it by the defendant's son to her. It was produced on the trial as coming from the defendant. The note having thus been used and accepted as payment, the old note was extinguished, as the stamped indorsement of payment showed, and there was no legal liability thereunder by anyone: Bixler et al. v. Lesh, 6 Pa. Superior Ct. 459.

In the married woman's Act of June 8, 1893, P. L. 344, the second section provides: "Hereafter a married woman may, in the same manner and to the same extent as an unmarried person, make any contract in writing, or otherwise, which is

necessary, appropriate, convenient, or advantageous to the exercise or enjoyment of the rights and powers granted by the foregoing section, but she may not become accommodation indorser, maker, guarantor or surety for another, and she may not execute or acknowledge a deed, or other written instrument, conveying or mortgaging her real property, unless her husband join in such mortgage or conveyance."

In Herr v. Reinoehl, 209 Pa. 483, Mr. Chief Justice MITCHELL comments very fully upon this act. He says: "It has long been settled that a married woman may mortgage her real estate for her husband's debt or for future advances to him. The basis of the rule is stated in Kuhn v. Ogilvie, 178 Pa. 303. The question of her transfer of her personal property for the same purpose did not arise at common law, as by marriage her goods and chattels became the husband's. But after the Act of April 11, 1848, P. L. 536, by which 'every species and description of property' continued to be hers 'as fully after marriage as before,' it was held in Lytle's Appeal, 36 Pa. 131, that an assignment by husband and wife of the latter's chose in action was valid, though made to indemnify the indorser of the husband's note. And in Kulp v. Brant, 162 Pa. 222, it was said by our Brother DEAN, 'It has so often been decided that a married woman may assign her personal property as security for her husband's debts . . . . that it is useless to again cite the authorities.'

"The Act of June 8, 1893, P. L. 344, has not changed the law in this respect: Kuhn v. Ogilvie, 178 Pa. 303; Dusenberry v. Ins. Co., 188 Pa. 454; Peter Adams Paper Co. v. Cassard, 206 Pa. 179. That act is an enabling act, and is not to be construed as narrowing a married woman's contractual capacity, except where the intent to do so expressly appears. The provision in which such intent is claimed to be found is in section second, which after authorizing her to make any contract in furtherance of the general power granted in the preceding section, enacts 'but she may not become accommodation indorser, maker, guarantor or surety for another.' This has been held to apply only to the technical contract of indorsement, guaranty or suretyship included in the words of the act, Dusenberry v.

Insurance Co., 188 Pa. 454, though it will be held to cover a manifest device to evade the prohibition, such as was before the court in Patrick & Co. v. Smith, 165 Pa. 526. But what the statute prohibits is the incurring of a personal liability for the forbidden purpose, a liability which carries the risk of a general judgment. This clause was 'a cautionary provision against too liberal a construction of the very large powers conferred by the first part of the section, a saving of the previously existing disability so far as it covered the particular class of contracts specified:' Kuhn v. Ogilvie, 178 Pa. 303. The pledge of specific property whether real or personal was within her previously existing powers, and these, as heretofore said, were not narrowed by what was intended as an enabling statute to enlarge them."

Whatever William Kilner may have meant in asking his wife to sign the note, whether with his name or her own, she signed it as principal, not as indorser, not as guarantor, not as surety, and William Kile, the note being presented to him after the death of the husband of the maker, became her bail and not that of her former husband.

We do not now decide, because it is not necessary to do so, what effect the signing by Kile as bail would have had, if the note had been signed by him before the death of Kilner.

We are of the opinion that the court below, under all the authorities, properly construed the obligation, and inasmuch as it was used for the payment of the previous note, on which the defendant's husband was the principal maker, the defendant (the bail having paid the note and taken an assignment thereof) was liable for the amount.

It follows that the refusal of the court to enter judgment for the defendant n. o. v. and the entry of it upon the verdict in favor of the plaintiff, was correct.

This practically disposes of all of the assignments of error, although they are not taken up seriatim and discussed separately.

Judgment affirmed.

PORTER, HENDERSON and ORLADY, JJ., dissent.