### Bonner v. Randal et ux.

*Equity—Specific performance—Married women—Parties.*

1. A married woman who has joined in a written agreement for the sale of her husband's land may be made a party defendant in a bill in equity to enforce the specific performance of such agreement.

*Equity—Specific performance—Time—Waiver—Vendor and vendee—Forfeiture.*

2. Although the time of settlement may have been of the essence of an agreement for the sale of land, the vendor by delaying to furnish a necessary survey and by other delays may be deemed to have waived the performance as to time.

3. Equity abhors a forfeiture which works a loss contrary to equity.

4. If a vendor of land desires performance by the vendee at the time fixed for the performance and the covenants are mutual, the former must either perform or tender performance of his part of the contract.

5. Where, before tender of performance by the vendor, no material change has taken place as to the value of the property or the condition of the parties, and where time admits of compensation, the mere non-payment of the purchase money by the vendee on the day fixed and a subsequent delay by him for a relatively long time thereafter will not excuse the vendor from the performance of his contract.

6. A delay of one year forms no objection to the assertion by the vendee of his equity where there has been mutual forbearance of the vendor and vendee on account of embarrassment of the title of the former.

7. A claim otherwise just does not become stale by laches merely because a plaintiff does not file his bill by one year as soon as he might have done.

Demurrer to bill in equity. C. P. Montgomery Co., June T., 1924, No. 7.

*D. Yeakle Miller,* for plaintiff.

*Larzelere, Wright & Larzelere,* for defendants.

WILLIAMS, J., June 20, 1925.—On the 29th day of August, last year, John S. Bonner, the plaintiff, filed the bill against Harry L. Randal, M. D., and his wife, Irene B. Randal, the defendants, to compel their specific performance of a written, sealed and delivered contract, made the 12th day of May, 1923, between the defendants and one Edmund F. McCool and, subsequently, for a valuable consideration, by McCool assigned, transferred and set over unto the plaintiff, wherein the defendants agreed to sell and convey and McCool agreed to purchase the lot, or piece, of ground described in the bill.

The first reason set forth to sustain the demurrer is that no right of action in equity exists against Irene B. Randal, because (it is said) she is no party to the agreement. As a matter of fact, however, together with her husband,

she did sign, seal and deliver to McCool the contract of sale and, therefore, a right of action in equity, if it exists against her husband, lies, also, against her.

Ever since, if not before, the passage of the Act of April 11, 1848, P. L. 536-8, section 6, P. L. 536-7, a married woman could sell, or mortgage, her separate real estate, or assign her personal property, as security for the debts of her husband: 3 Johns. Chan. Rep. 129; Jamison v. Jamison, 3 Whart. 457 (1838), Sergeant, J.; Hoover v. Samaritan Society, 4 Whart. 445 (1839), Kennedy, J.; Sheidle v. Weishlee, 16 Pa. 134 (1851); Black v. Galway, 24 Pa. 18 (1854), Lewis, J.; Miner v. Graham, 24 Pa. 491 (1855), Lewis, C. J.; Lytle's Appeal, 36 Pa. 131 (1860), Lowrie, C. J.; Haffey v. Carey, 73 Pa. 431 (1873), Sharswood, J.; Hagenbuch and Wife v. Phillips, 112 Pa. 284 (1886); Kulp v. Brant, 162 Pa. 222 (1894), Dean, J.; Du Bois Deposit Bank v. Kuntz, 175 Pa. 432 (1896); and Kuhn v. Ogilvie, 178 Pa. 303 (1896), Mitchell, J.; and, since the passage of the Act of June 8, 1893, P. L. 344-5— the general intent of which is so plainly an enlargement of the contractual capacity of a married woman that nothing less than explicit negative words should be construed as narrowing powers admittedly possessed before the passage of the act: Kuhn v. Ogilvie, *supra*—the capacity of a married woman to contract is the rule and her incapacity so to do is the exception. In a contractual way she may now do anything except mortgage, or convey, her real property without the joinder of her husband, or become accommodation maker, or endorser, or guarantor, or surety, for another. Formerly, her capacity to contract was exceptional and her disability general; now, the disability is exceptional and the capacity general: Patrick & Co. v. Smith, 165 Pa. 526 (1895), Dean, J.; Bartholomew v. Allentown National Bank, 260 Pa. 509 (1918), Brown, C. J.; and Newhall, Assignee, v. Arnett, 279 Pa. 317 (1924), Walling, J., page 321.

In Brown v. Pitcairn, 148 Pa. 387 (1892), Sterrett, J., upon which counsel for the defendants solely rely and in which the decree of the court below was held to be erroneous in that it included the wife of the defendant, the action had been brought against John Pitcairn alone. His wife was not a party to the proceeding. Here, Mrs. Randal has been joined as a party defendant with her husband.

The second reason set forth is that the description of the lot, as given in the first paragraph of the bill, was accurate and particular and needed no survey and that for such survey no provision was made.

The lot was only a part of a larger tract of land owned by the defendant husband, who—a short time prior to the 11th day of January, 1923—had subdivided the tract into building lots, and, in the agreement of May 12th—a copy of which is attached to and made a part of the bill—the piece of ground was described as being situate on the northwest side of the Chestnut Hill and Spring House Turnpike (the Bethlehem Pike) and beginning at the point of intersection of the said turnpike with a proposed road, not yet laid out and still unnamed. It was, therefore, necessary that the purchaser—if he was to know where his lot began and to be able to have a proper deed made for his land—should be furnished with the location of the proposed road when laid out and named. Evidently, Dr. Randal, himself, so felt, for his agent, the Chelten Trust Company, of Germantown, in the City and County of Philadelphia, agreed to and—although not until the 20th day of June—actually did furnish a correct survey to the plaintiff.

The third reason given in support of the demurrer is that the bill discloses no compliance by the plaintiff with the provision in the agreement that settle-

ment was to be made within thirty days from May 12th, time being of the essence of the contract.

The failure of the defendant husband, through his agent, to provide the plaintiff with the necessary information as to the location of the lot until the expiration of twelve days after the termination of the thirty-day period within which settlement was to take place has already been noted. It is to be observed, also, that, immediately upon receipt by the plaintiff of the correct survey, he forwarded it, together with the other data requisite for the preparation of a deed, to an attorney, who, having drawn the deed, sent it and the survey to a reputable title company, by which the contract said the title was to be insurable and which, on July 9th, issued a settlement certificate listing certain objections to be removed by the defendants and, on July 13th, delivered the deed to the defendants for their execution; and that, thereafter, in the attempt to remove several of the objections appearing on the settlement certificate, considerable time was consumed by Dr. Randal, who, so late as the 6th day of August, requested the mailing to him of a duplicate certificate. It may well be, therefore, that the conduct, for almost sixty days after the 11th day of June, of the male defendant amounted to a waiver by him of the time provision contained in the contract of sale.

While, broadly speaking, it is undoubtedly true that, although, at one time, serious doubt was entertained as to whether time could be made of the essence of a contract, the power of the parties to an agreement for the sale of real estate so to do must now be conceded and, hence, in those cases where, without just cause and without a subsequent waiver, there is a default in payment at the day, a court of chancery will not interfere to help the party in default: Mad. Chan. 416, 417; Sug. Ven. 416; Fonbl. Eq. 48, note; Dauchy v. Pond, 9 Watts, 49 (1839), Rogers, J., page 51; Moore v. Shenk, 3 Pa. 13 (1846), Gibson, C. J.; D'Arras v. Keyser, 26 Pa. 249 (1856), Woodward, J., page 254; and Becker v. Smith, 59 Pa. 469 (1868), Agnew, J., page 472; yet, principles of equity are more delicate and subtle in their texture than are rules of law and the omission by the plaintiff to tender payment at the day may be unimportant, for the true rule, as given by Chancellor Kent, in Benedict v. Lynch, 1 Johns Chan. Rep. 374, is that it is only where there is nothing in the acts or conduct of the other party amounting to acquiescence in the delay that the court will not interfere: Fisher v. Worrall, 5 W. & S. 478 (1843), Gibson, C. J., page 485. And, in this connection, also, sight must not be lost of the general principles that, according to the rule of equity, time is not of the essence of a contract: Bodine v. Glading, 21 Pa. 50 (1853), Lewis, J., page 54; and that equity abhors every forfeiture which works a loss contrary to equity: Brown v. Vandergrift, 80 Pa. 142 (1875), Agnew, C. J., page 148; and Axford v. Thomas et al., 160 Pa. 8 (1894), page 11.

Although there may have been a technical breach of contract as to time of performance on the part of the plaintiff, it is to be remembered that the covenants of the vendors and vendee were mutual and called for simultaneous performance and that the bill does not show that the sellers ever tendered to the buyer a deed for the premises. Likewise, it is not to be forgotten that nowhere in the bill does it appear that, before tender of performance by the defendants, if such tender were ever made, any material change had taken place either as to the value of the property or in the condition of the parties.

In Pennsylvania, specific performance of a contract depends upon the justice of the case. Hence, although by the express stipulation of the parties to a written agreement for the sale of land, time may be made material, even as to the payment of the consideration; yet, where, before tender of perform-

ance by the vendor, no material change has taken place as to the value of the property or the condition of the parties and where the time admits of compensation, the mere non-payment of the purchase money by the vendee on the day fixed and subsequent delay by him for a relatively long period of time after tender of performance on the part of the vendor will not excuse the latter from the performance of his contract; and where the covenants are mutual and to be performed at the same time, if the vendor desires performance by the vendee, at the time fixed for performance the former must either perform or tender performance of *his* part of the contract and if, in turn, the latter fails or refuses to comply with his part of the agreement and, for that reason, the vendor desires to terminate the agreement, he must so notify the vendee. If the vendor does not and no material change in the condition of the parties or the value of the property has taken place or thereafter occurs prior to performance or tender thereof by the vendee, the latter may still enforce the contract, notwithstanding delay on his part in the payment of the purchase money: Seton *v.* Slade, 7 Vesey, 265; Halsey *v.* Grant, 13 Vesey, 73; Alley *v.* Deschamps, 13 Vesey, 225; Hearne *v.* Tenant, 13 Vesey, 289; Hipwell *v.* Knight, 1 Younge & Coll, Ex., 415; Pratt and Others *v.* Carroll, 8 Cranch. 471 (1814), Marshall, Ch. J.; Pratt and Others *v.* Law and Campbell, 9 Cranch. 456 (1815), Johnson, J., pages 493-94; Brashier *v.* Gratz, 6 Wheat. 528 (1821), Marshall, Ch. J., page 533; Taylor *v.* Longworth et al., 14 Peters, 172 (1840), Story, J., pages 174-75; De Camp *v.* Feay, 5 S. & R. 323 (1819), Gibson, J.; Remington *v.* Irwin, 14 Pa. 143 (1850), Coulter, J.; Smith and Fleek's Appeal, 69 Pa. 474 (1871), Williams, J., page 481; Sylvester *v.* Born, 132 Pa. 467 (1890), page 470; King's Estate, 215 Pa. 59 (1906), Fell, J., page 61; and Markley *v.* Godfrey, 254 Pa. 99 (1916), page 107.

Sufficient has been said to indicate that the fourth reason—which is that the clauses in the agreement of May 12th, to the effect that, if the party of the second part should fail to complete the contract within the time specified, at the option of the party of the first part, the agreement should become null and void and the sum paid on account (more than one-fifth of the total purchase price) should be retained by the party of the first part as compensation for the damage and expense to which he had already been put; and if, for any reason, a good and marketable title, such as would be insured as aforesaid, could not be made, the agreement should be void and the sum paid on account returned to the party of the second part in lieu of all claims for damages or otherwise—so definitely fixed the rights of the parties and, in case of default by the vendee or inability to perform by the vendor, fully protected both, that the plaintiff is barred from equitable relief. The sixth reason— which is that the husband defendant (presumably in refusing to convey to the plaintiff) merely exercised a right bestowed upon him by the agreement —the fifth reason—which is that, inasmuch as the plaintiff tendered the defendants neither a deed for execution nor the balance of the purchase money and did not bring the latter into court, the bill discloses no equity—and the eighth reason—which is that the bill as a whole is so defective and lacking in equity that a decree for specific performance ought not to be made— are not of controlling weight.

In passing, however, we pause long enough to record—in addition to the observations hitherto noted that, even if the plaintiff failed to perform within the specified time, the husband defendant also failed, did he not by his acts of commission and omission actually waive the right to exercise the option of rendering the agreement void and of no effect and that the title company acting for the plaintiff sent a deed to the defendants for execution by them—that,

for anything appearing in the bill, the defendants, if they had so wished, could have removed the objections and passed a good and marketable title insurable by a reliable trust company and that, in the bill, they are now offered by the plaintiff the remainder of the consideration in cash. Of course, whether the testimony hereafter produced by the plaintiff in support of the allegations contained in his bill will, on final hearing, entitle him to the decree he seeks is a matter for future consideration and determination.

The seventh and only other reason urged in support of the demurrer is, in substance, that, inasmuch as Dr. Randal, on the 29th day of August, 1923, sent a check to the plaintiff for the amount of money the former, on the day of the date of the agreement, had received from McCool on account of purchase price and the plaintiff did not file his bill until Aug. 29, 1924, or exactly one year after the attempted return of the down-money, the plaintiff, by his own laches, has lost every equitable right.

Here, again, there must be no overlooking the averments in the bill, which says, among other things: that the check of Dr. Randal has never been deposited; that, after the 29th day of August, 1923, the plaintiff made frequent, although ineffectual, efforts to settle; that, for a long time, he had the remainder of the consideration money in hand and was anxious to pay it to the defendants, who, however, always refused to execute a deed for the premises; and that, at all times, he has been and now is ready and willing to comply with the terms of the contract of sale.

It is true that the courts have refused to direct the specific performance of contracts after the lapse of periods of years of different lengths; that, among the periods after which such performance has been refused, are twenty-four years: Wilbur v. Toothaker et al., 75 Atl. Repr. 42 (1909), Cornish, J. (S. J. C. of Me.); twenty-three years: Bennett and Others v. Welch, 25 Ind. 140 (1865), Frazer, Ch. J.; twenty years: Pratt and Others v. Law and Campbell, supra; nineteen years: Frame v. Frame, 9 S. E. Repr. 901 (1889), Green, J. (S. C. of A. of W. Va.); fourteen years: Galliher v. Cadwell, 145 U. S. 368 (1892), Brown, J.; nine years: Lowther Oil Co. v. Miller-Sibley Oil Co., 44 S. E. Repr. 433 (1903), Brannon, J. (S. C. of A. of W. Va.); eight years: Hatch v. Kizer, 30 N. E. Repr. 605 (1892), Wilkin, J. (S. C. of Ill.); seven years: Patterson v. Martz, 8 Watts, 374 (1839), Gibson, Ch. J.; and more than three years: Fuller v. Hovey and Another, 2 Allen, 324 (1861), Bigelow, Ch. J. (Mass.); that an unexplained delay of two years before filing a bill for specific performance of a contract to convey improved city property upon which the price has not been paid will defeat the relief sought: Barbour v. Hickey, 24 L. R. A. 763 (1894), Alvey, Ch. J., (D. of C. S. C., Gen. Term); and that a court of equity will not enforce the specific performance of a contract to convey lands when the plaintiff shows no compliance, or offer of compliance, on his part with the agreement and no excuse therefor for the period of twenty-one or twenty-two months from the time he bound himself to perform: Green v. Covillaud, 10 Cal. 317 (1858), Baldwin, J.

On the other hand, time will form no objection to the assertion by the vendee of his equity in a contract for the sale of land, during the mutual forbearance of the vendor and vendee on account of the embarrassment of the title of the former, even where thirty years have elapsed from the making of the contract: Craig v. Leiper, 10 Tenn. (Cooper's Edition) 192 (2 Yerger, 172), Catron, J.; specific performance of the obligation of a bond given to secure a conveyance has been awarded thirty-five years after the execution of the bond: Coulson v. Walton and Others, 9 Peters, 62 (1835), M'Lean, J.; and it has been held that specific performance of a parol agreement for a

conveyance will be made even though the contract was entered into sixty or seventy years previously: Somerville *v.* Trueman, 4 Har. and McH. 43 (1797) (Md.).

No inflexible rule can be prescribed, then, as to the lapse of what period shall disentitle a suitor to a decree of specific performance, for the question of laches does not depend, as does the statute of limitations, upon the fact that a certain definite time has elapsed since the cause of action accrued, but upon whether, under the circumstances of the particular case, the plaintiff is chargeable with want of due diligence in failing to institute or prosecute his proceeding: Alsop *v.* Riker, 155 U. S. 448 (1894), Harlan, J., pages 460-61; Townsend *v.* Vanderwerker, 160 U. S. 171 (1895), Brown, J., page 186; McIntire *v.* Pryor, 173 U. S. 38 (1898), Brown, J., page 59; Edwards *v.* Western Maryland Ry. Co., 268 Pa. 228 (1920), Brown, C. J., page 230; Kinter *v.* Commonwealth Tr. Co., 274 Pa. 436 (1922), Walling, J., page 443; and Stevens *v.* D., L. & W. R. R. Co., 278 Pa. 284 (1923), Kephart, J., pages 292-93.

Laches is an equitable defence controlled by equitable considerations and the lapse of time must be so great and the relations of the defendant to the rights such that it would be inequitable to permit the plaintiff now to assert them: Halstead *v.* Grinnan, 152 U. S. 412 (1893), Brewer, J., pages 416-17; Ewert *v.* Bluejacket, 259 U. S. 129 (1922), Clarke, J., page 138; and Frank F. Smith Hardware Co. *v.* S. H. Pomeroy Co., 299 Fed. Repr. 544 (1924), Manton, J. (C. C. of A., 2nd Cir.), pages 547-48.

The only laches appearing in the bill of which the defendants are in a position to complain is that they were not sued as soon as they might have been. Laches, in bringing suits, of only three hundred and sixty-five days is not, however, a bar to the action. A claim otherwise just does not become stale merely because the plaintiff did not file his bill by one year as soon as he might have done: Green et ux. *v.* Spring et ux., 40 Montg. Co. Law Repr. 232 (1924), page 241.

And now, June 20, 1925, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows:

The demurrer is overruled, all the reasons in support thereof are dismissed and the defendants are required, within thirty days of this date, to answer the bill.

From Aaron S. Swartz, Jr., Norristown, Pa.