# Hagenbuch and Wife *versus* Phillips.

A married woman, by mortgage duly executed and acknowledged when her husband joins therein, may bind her real estate. This she may do whether it be to secure the payment of a debt due by herself or by her husband, or by a stranger.

March 3d, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Columbia county:* Of January Term, 1886, No. 242.

*Scire facias sur* mortgage brought by David Phillips for the use of Josiah Phillips, against W. Potts Ramsey, Anna D. Hagenbuch, and C. C. Hagenbuch. Pleas, payment with leave, and as to Anna Hagenbuch the additional plea of coverture.

[Hagenbuch and Wife v. Phillips.]

The facts, as they appeared on the trial before ELWELL, P. J., appear in the following charge to the jury:

This case depends upon a question of law. There is no contradiction in the parol evidence, and we therefore take it for granted that all the facts alleged by the defendants are established, and the question is whether they amount to a defence in law. In 1873, William Potts Ramsay, brother of Anna D. Hagenbuch, purchased from David Phillips some property, agreeing to pay at certain times, and by April, 1874, to secure the balance due Phillips. He was unable to meet his obligations, and, not having, as he says, sufficient real estate to secure the debt, he applied to his sister, Mrs. Hagenbuch, to become surety for the balance due. There is no question that the debt to David Phillips was a valid subsisting debt against William Potts Ramsey, who owned one seventh interest in land which had descended to him and six other children of his deceased father, Mrs. Hagenbuch being entitled, at the date of the mortgage, to two undivided sevenths. On her brother's application the sister consented to aid him. A mortgage was suggested (perhaps at the instance of Phillips), was drawn and presented for signature to Mr. Ramsey, Mrs. Hagenbuch, and her husband. The husband did not approve the arrangement, and hesitated to give his assent; at all events, he objected to being made personally liable. He was informed that the object was to hold the land, and upon that assurance gave his assent, and [the three (Ramsey, Hagenbuch and his wife), joined in the mortgage upon the one seventh Ramsey's interest, and the two sevenths Mrs. Hagenbuch's interest, as described in the instrument itself, which is properly executed, duly acknowledged, and is recorded, and binds these defendants, unless there is some principle of law which holds that some one (or more) of them is not bound.] The mortgage was assigned by David Phillips to Josiah Phillips by an instrument in writing, witnessed by two witnesses and recorded, which assignment passed to Josiah Phillips the legal title, so that he can recover, provided David Phillips might have recovered. The question is whether Mrs. Hagenbuch, a married woman at the time of executing the mortgage, is bound by it; whether the mortgage has created a lien upon her property; whether it was competent for her to make an instrument of that kind. Can a married woman bind her separate estate by mortgage for the debt of a person not her husband? She may, for a present debt of her husband. She may, for a future debt not yet contracted; but in all the cases in this state hitherto decided by the Supreme Court, the question appears to have stopped at that. The language is that " she may give a valid

[Hagenbuch and Wife v. Phillips.]

mortgage for the debt of her husband," "may bind her estate for the debt of her husband," and this seems to have led to the conclusion that she could go no further, that her power to bind her estate by mortgage stopped at the debts and liabilities of the husband, and such was the view we took in the Building Association case that has been cited here. But since that decision, a learned judge of the Supreme Court has gone further; and although the point is not precisely the same, yet, as the reason is applicable here, I have concluded to adopt the view expressed by that judge as the law of this case. As far back as 1838 (Jamison *v.* Jamison, 3 Whart., 457), the judge delivering the opinion said: "It has been further contended that a married woman has no power to mortgage her lands. It is believed, however, that nothing has been more usual in Pennsylvania than for husband and wife to mortgage the wife's land by the ordinary mode of conveyance in a mortgage acknowledged according to the legal form; and it cannot be doubted that the power to convey in fee simple has been practiced from the first settlement of the province, and recognized and established by the Act of Assembly of 1770, which confers the right to mortgage, since the power to grant the land necessarily implies the power to grant a lesser estate." The statute law authorizes a married woman to sell or convey her land, and it provides the mode by which she shall make the conveyance. Her husband must join with her, and the acknowledgment must be before a magistrate (empowered to take it) separate and apart from her husband—she acknowledges that of her own free will and accord she makes the instrument, without any coercion or compulsion on the part of her husband. Such a conveyance passes title as surely as though she were unmarried. The conclusion of the Supreme Court, in the case just read, is that if she can convey her land, pass the whole title away from herself, she certainly may make a conditional deed by which the land may be returned to her again by the redemption money being paid. The case of Cridge *v.* Hare, 2 Out., 561, was decided in 1881, and is the latest we have upon the subject. In it Judge TRUNKEY says: "A married woman may mortgage her estate for her husband's benefit, to secure either existing debts or a future indebtedness: 23 P. F. S., 431. She may borrow money on the security of her mortgage, and immediately give the money to her husband: Daubert *v.* Eckert, 13 Norris, 255. The right of disposition is incident to her separate property, and she may sell it or give it to whom she pleases. But, generally, she could only convey her real estate with the consent of her husband manifested by his joining in the deed. [Her mortgage deed is valid when given

[*Hagenbuch and Wife v. Phillips.*].

to secure the debt of a stranger, upon the same principle that it is when given for her husband's debt. She can make no binding executory contract except as authorized by the statute; nor can she convey her real estate without compliance with the statutory requisites; the consideration for her deed of mortgage may be valueless to herself, and yet be good. It has been settled that when she can convey her land she may mortgage it. Though a mortgage is often called a mere security for a debt, and in many respects that is true, yet it is a conveyance (subject to an equity of redemption). executed in the same manner as an absolute deed." Although the exact question raised here was not before the court there, yet the reasoning of the judge has in it so much strength, that I feel myself forced to adopt his view as the law of Pennsylvania. If a contrary view had been the mind of that tribunal, the Supreme Court, that a married woman could not mortgage her property to secure the debt of another person, these expressions of Judge TRUNKEY would have been brought to their notice, and there would have been an expression of dissent. It is therefore, I think, now the settled law of the state, that a married woman may make a deed in the shape of a mortgage to help her brother—may become security by mortgage for the debt of a person not her husband.] She would not be bound by a note, bond or judgment, because none of these have the safeguard of separate acknowledgment before a magistrate. Her individual mortgage would not bind her; but [where there is a valid debt, and some of the parties to the instrument, some of the mortgagors, are bound, and she conveys her land as security for them, her land is bound by means of such conveyance, her husband joining in the deed.

I might have contented myself by merely saying that the defendants have made no defence against this mortgage. Mr. Ramsey has no defence, because it was his debt and his mortgage. Mr. Hagenbuch has no defence, because the mortgage does not affect him, it being a proceeding *in rem.*, enforceable only against the thing described; Mrs. Hagenbuch has no defence on the ground of being a married woman, because her conveyance was in due form of law, and she was not induced to enter into it by either fraud or duress, or anything of the kind.]

[We instruct you that the plaintiff is entitled to a verdict for the whole amount secured by the mortgage (there being no evidence of any payment) with interest. It is contended that because Ramsey had agreed with Phillips some time before the mortgage was executed that he would secure Phillips, the mortgage was given for a pre-existing debt of Ramsey,

and is therefore void.   We decline to hold that to be the law. Mrs. Hagenbuch may have thought that if she assisted her brother he would be able to go on with his business, and that if she did not he might be sold out; and she may have executed the mortgage to prevent that, a mortgage payable some three years after date, due April 1st, 1876.   It is the same thing as though by mortgage she had borrowed money of Phillips and handed it over to Ramsey for the purchase of goods.]

Verdict for the plaintiff, and judgment thereon; whereupon C. C. Hagenbuch and Anna Hagenbuch, his wife, in right of said wife, took this writ, assigning for error those portions of the charge included within brackets.

*C. G. Barkley* (*L. S. Wintersteen* with him), for plaintiffs in error.—The principle stated in Jamison *v.* Jamison, 3 Whart., 472, concerning the power of a married woman to make a mortgage, that " a power to grant the whole estate necessarily implies the power to grant a lesser estate," was concerning a mortgage to secure the debt of the husband. Many reasons might be cited to sustain such a mortgage which cannot be applied to a mortgage to secure the debt of a third person; for before the Act of 1848, upon marriage, the husband became entitled to the use and enjoyment of the real estate; by reducing her choses in action to possession they became absolutely his.   All the property which she brought to her husband, except a remainder in her real estate after his death, was liable to be seized and sold at the suit of his creditors: Bear's Admr. *v.* Bear, 9 Casey, 527.   In the case of a mortgage to secure her own debt, it has been held, even where the money was expended in the improvement of her separate estate, she could only be held for the amount actually received by her; and that she could not make a contract except such as she is authorized to make by statute: Wolbach *v.* The Lehigh Building Association, 3 Norris, 214. The same principles have been applied to mortgages concerning the debts of her husband.   " It is the settled law of Pennsylvania mortgage that though in form a conveyance of title, it is in reality, both at law and equity, only a security for the payment of money or performance of other collateral contract": Wilson et al. *v.* Shoenberger's Exrs., 7 Casey, 299. The Act of Assembly, February 24th, 1770, was in first and third sections for the confirmation of certain deeds, and the second section was intended to avoid difficulties such as mentioned in the first section, and contains a clause not found in Purdon's Digest, 568, pl. 22, to wit: " And in order to establish a mode by which husband and wife may hereafter

[Hagenbuch and Wife *v.* Phillips.]

convey the estate of the wife, Be it enacted, &c." This Act provided for conveyance, &c., of the wife's lands, but nowhere mentioned a mortgage. It was evidently not intended that under the form provided by this Act, the husband and wife, without receiving the least consideration, are authorized to enter into a contract of suretyship to affect the wife's estate, for the debt of a person not her husband, which is the collateral contract in this mortgage.

*E. H.* and *R. R. Little,* for defendants in error.—A married woman may make a valid mortgage of her separate property to secure the payment of the debt of her husband, or of any other person. There is a general unanimity in holding that a mortgage upon her property may be enforced against that, whether made for her benefit or not: 1 Jones on Mortgages, sec. 113; see also sections 109 and 110.

A married woman's " mortgage deed is valid when given to secure the debt of a stranger, upon the same principle that it is when given for her husband's debt ": Hepburn *v.* Warner, 112 Mass., 271; Cridge *v.* Hare, 98 Pa. 561 per TRUNKEY, J.

The mortgagee has nothing to do with the application of the money. All that is necessary is that the husband and wife should join in the execution of the mortgage, and that she should separately acknowledge the instrument in the manner prescribed by law: Daubert *v.* Eckert, 94 Pa. St., 255.

The opinion of the court was delivered March 15th, 1886.

PER CURIAM. It is now well settled law in Pennsylvania that a married woman, by mortgage duly executed and acknowledged, when her husband joins therein, may bind her real estate. This she may do whether it be to secure the payment of a debt due by herself, or by her husband, or by a stranger. As she may, according to the form prescribed by the statute, convey her real estate by deed, absolute on its face, so she may, in like manner, execute and acknowledge a defeasible deed or mortgage to bind her real estate, and which may result in passing all her title therein to a purchaser under the mortgage.

Judgment affirmed.