DE ROUX et al. v. GIRARD'S EX'R et al.

(Circuit Court of Appeals, Third Circuit. December 2, 1901.)

1. EQUITY—BURDEN OF PROOF UNDER PLEADINGS—ALLEGATIONS OF FRAUD.

The burden of proof rests upon a complainant to prove fraud alleged in the bill as a ground for setting aside a conveyance, notwithstanding the fact that because of want of personal knowledge by defendants the answer lacks the probative force of an answer under oath made upon actual knowledge.

2. MORTGAGE—IMPEACHMENT FOR FRAUD—CONFIDENTIAL RELATIONS.

The mother of complainants and her sister were tenants in common with others in certain timber lands, and also coal lands. In 1857 she and her sister and their husbands purchased the interests of their co-tenants in the timber lands, and gave a purchase-money mortgage for the entire purchase price, which included also their interests in the coal lands. The certificate of the officer taking the acknowledgment stated that the married women were examined separate and apart from their husbands, as required by law, and that the contents of the mortgage was fully made known to them. The mortgage matured in five years, and was subsequently foreclosed, and the mortgagees purchased the property thereunder. A defense was made by one of the mortgagors, but no claim was made of any error in the mortgage. One of the mortgagees had been attorney for all the tenants in common in litigation respecting the lands, but an interest therein had been conveyed to him in payment for his services, and it did not clearly appear that at the time the mortgage was given the relation of attorney and client existed between him and the mortgagors. Held, that there was nothing in such

facts to sustain a claim made more than 30 years later, and after the death of the original parties, that the coal lands were included in the mortgage without the knowledge of complainants' mother, and in fraud of her rights.

**3. MARRIED WOMEN—POWER TO CONVEY PROPERTY—LAW OF PENNSYLVANIA.**

Under the law of Pennsylvania in force in 1857, a married woman could bind her separate property by a mortgage in which her husband joined, and which was acknowledged as required by law in respect to absolute conveyances.

**4. FOREIGN WILL—FAILURE TO PROBATE.**

An action cannot be maintained by a devisee to recover lands in Pennsylvania under a foreign will, which was not proved as required by the laws of the state, and where no copy was probated in the state, as required by Act March 15, 1832 (P. L. 136).

**5. TAX SALE—VALIDITY AND EFFECT.**

Under the law of Pennsylvania, a sale and conveyance of lands for taxes, regularly made, passes a good title to the purchaser, in the absence of fraud.

**6. EQUITY—LACHES—SUIT TO RECOVER REAL ESTATE.**

A suit by the heirs of a mortgagor to impeach the mortgage for fraud, and recover lands included therein, is barred by laches, where the claim was not asserted until 40 years after the mortgage was executed, and 33 years after its foreclosure and the sale of the land thereunder, during all of which time the purchasers and those claiming under them were in open and notorious possession, and not until the original parties to the transaction were dead, and especially where the mortgagor, although living until 5 years before the commencement of the suit, never made any claim adverse to the mortgage.

**7. WITNESSES—COMPETENCY OF PARTY—TRANSACTIONS WITH PERSONS SINCE DECEASED.**

Under Rev. St. § 858, a party complainant in a suit against the representatives of persons deceased is not a competent witness as to transactions with the decedents, notwithstanding an assignment made pending the suit transferring all his interest in the subject-matter to others, where he remains a party to the record.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

See (C. C.) 90 Fed. 537; (C. C.) 92 Fed. 948; (C. C.) 105 Fed. 798.

Carrie B. Kilgore and James Scarlett, for appellants.

John G. Johnson, J. Percy Keating, and John M. Gest, for appellees.

Before ACHESON and GRAY, Circuit Judges, and KIRKPATRICK, District Judge.

ACHESON, Circuit Judge. This bill in equity was brought on January 25, 1898, by John Joseph Etienne Louis De Roux and Etienne Armaud De Roux against Ellen E. Girard, widow, executrix and sole devisee of John Augustus Girard, deceased, Mary De Witt Cuyler, widow and administratrix of the estate of Theodore Cuyler, deceased, Thomas De Witt Cuyler, C. C. Cuyler, Eleanor De Witt Cuyler, and Theodore De Witt Cuyler, children of Theodore Cuyler, deceased, Charles Tete, and others. Pending the suit, the death of Mary De Witt Cuyler was suggested, and C. C. Cuyler, administrator of her estate, was made a defendant. On April 9, 1899, Ellen E. Girard died, and the executor of her will, the Penn-

sylvania Company for Insurance on Lives, etc. (one of the appellees), was substituted as a defendant.

The complainants in the bill are children and the heirs at law of Marie Celeste De Roux, who was a niece of Stephen Girard, and one of his heirs at law. The subject-matter of the suit is the alleged interest of Marie Celeste De Roux in what are called the intestate farm or timber lands and coal lands (in all 12 tracts) of Stephen Girard, situate principally in Schuylkill county (but partly in Columbia county), Pa. Upon the death of Stephen Girard, in 1831, Madame De Roux, as one of his heirs, acquired an undivided $1/21$ share in these lands. The bill alleged that in the year 1845, by purchase from Francoise Fenelon Vidal, another of Stephen Girard's heirs, Madame De Roux acquired a further undivided interest in these lands, thus making her then entire interest an undivided $1/9$ share; and that upon the death of Madame Vidal, in June, 1861, she acquired under the will of the latter a further undivided interest, to wit, a $1/45$ share. The bill impugns as fraudulent, as against Madame De Roux, a purchase-money mortgage executed by her and her husband and others to John Augustus Girard, Theodore Cuyler, and others, on December 26, 1857, upon which foreclosure proceedings were instituted on February 28, 1863, a final judgment against the defendants (the mortgagors) entered on July 13, 1863, and sheriff's sales thereunder made, and sheriff's deeds to the purchasers executed, delivered, and recorded, in the year 1864. The bill charges that Theodore Cuyler fraudulently caused to be included in this mortgage interests of Madame De Roux in the above-mentioned lands, which she did not intend to include therein, and did not know were so included, and that he fraudulently caused the same to be sold at the sheriff's sale under the foreclosure proceedings, he (Cuyler) purchasing at the sheriff's sale the interest of Madame De Roux in the coal lands so fraudulently included in the mortgage, and Charles Tete, with knowledge of the fraud, purchasing at the sheriff's sale her interest in the farm lands so fraudulently included in the mortgage; and that John Augustus Girard, Theodore Cuyler, and Charles Tete, conspiring and intending to defraud Madame De Roux of her rights in the coal lands, by deeds of conveyance among themselves, which were executed immediately after the sheriff's sale, became tenants in common in certain proportions in Madame De Roux's interests in the coal lands so collusively mortgaged and sold; and that they, the said John Augustus Girard, Theodore Cuyler, and Charles Tete, and those claiming under them, have been ever since continuously in the collusive and fraudulent receipt and enjoyment of the rents, issues, and profits of and from the interests of Madame De Roux in said coal lands. The scope of the prayers for relief is indicated by the following paragraph, taken from the appellants' brief:

"An accounting was asked for from Tete and the estates of Girard and Cuyler, and a decree charging the estate of Theodore Cuyler as trustee for Marie C. De Roux, and also a decree for the payment to the complainants of whatever should be found due them; also a decree for a reconveyance to the complainants of the said separate estate of Madame De Roux thus collu-

sively and fraudulently obtained from her by Tete, Girard, and Cuyler, and held from her and her heirs, by them and their representatives."

The bill sets forth that Louis Francois De Roux, the husband of Marie Celeste De Roux, died on February 23, 1874, and that she died on November 26, 1892. John Augustus Girard, as appears from the date of the probate of his will, died prior to September 19, 1870. Theodore Cuyler, the bill states, died on April 13, 1876.

The evidence in the case is principally documentary, and consists in large part of public records. The facts hereinafter stated appear therefrom. In 1850 the heirs at law of Stephen Girard (including Madame De Roux) instituted an action of ejectment in the circuit court of the United States for the Eastern district of Pennsylvania against the city of Philadelphia to recover the 12 tracts of land mentioned above, which action resulted in a verdict and judgment for the plaintiffs, who were put into possession of the lands by habere facias possessionem in the fall of 1853. The attorneys for the plaintiffs in that action were John M. Read, Esq., and Theodore Cuyler, Esq. By deed dated June 10, 1854, the heirs of Stephen Girard (including Madame De Roux) conveyed to John M. Read and Theodore Cuyler an undivided 15 per centum of each and all of said 12 tracts of land. That deed contains in its premises, and just before its conveying clause, these recitals ("the parties of the first part" being the heirs of Stephen Girard, and "the parties of the second part" being John M. Read and Theodore Cuyler), namely:

"Whereas, the said several tracts, pieces, or parcels of land, estates, and premises did all of them, upon the decease of said Stephen Girard, pass into the possession of the mayor, aldermen, and citizens of Philadelphia, who alleged and pretended a title to have and possess the same, and thereupon it was agreed between the said parties of the first part then claiming the said lands and the parties of the second part that they, the said parties of the second part, should undertake and conduct proceedings in the law for the recovery of the said tracts, pieces, and parcels of land, estates and premises, and as a compensation for their services rendered in such legal proceedings should receive an interest in all such lands equal to fifteen per cent. of their full amount and value; and whereas, such legal proceedings have been successfully conducted, and by final process issuing out of the circuit court of the United States in and for the Eastern district of Pennsylvania actual possession of the said lands has been delivered unto the said parties of the first part; and whereas, it is designed and intended by these presents to fulfill the before-mentioned agreement, and in good faith to grant, convey, and confirm unto the said parties of the second part the said interest in said tracts, pieces, or parcels of land, estates, and premises, equal to fifteen per cent. of their amount and value."

On December 26, 1857, by a deed of that date, John Augustus Girard and Ellen E., his wife, Caroline E. G. Peale and her husband, Harriet G. Clark and her husband, Francoise F. Vidal, John M. Read, and Theodore Cuyler sold and conveyed their respective interests in the Girard farm or timber lands above mentioned to Marie Celeste De Roux and Louis Francois De Roux, her husband, and Anne Stephanie De Lentilhac (sister of Madame De Roux) and Alfred De Lentilhac, her husband, for the consideration or price of $23,111.13, and on the same day these vendees executed to their vendors a purchase-money mortgage for the entire consideration

money, $23,111.13, payable in five years, with interest payable semi-annually. This mortgage, by plain description and unequivocal calls, covered the entire interests of Marie Celeste De Roux and Anne Stephanie De Lentilhac in all the above-mentioned Girard farm or timber lands and coal lands. The mortgage was duly executed in the city of Philadelphia by the mortgagors in person, and with separate acknowledgments, before an alderman, by Madame De Roux and her sister, Madame De Lentilhac. The annexed certificate of the alderman is dated December 26, 1857, and sets forth:

"The said Marie and Anne Stephanie, being by me examined separate and apart from their respective husbands, the contents thereof being first fully made known to them, did declare that they did voluntarily, and of their own free will and accord, seal, and as their act and deed deliver, the said indenture of mortgage without any coercion or compulsion from their said husbands."

The mortgage was duly recorded on February 24, 1858. As we have seen, the allegation of the complainants is that it was the intention of their mother to mortgage only the interests conveyed to her by the deed of December 26, 1857, and that the inclusion of anything more in the mortgage was without her knowledge, and a fraud upon her.

Undoubtedly, under the pleadings, the burden of proof to establish the alleged fraud is upon the complainants, even if it be conceded (as is contended by them) that for want of personal knowledge by some of the defendants their answers do not have the probative force of a responsive answer in equity on oath made upon actual knowledge.

Now, we have attentively read and considered the entire proofs, and fail to discover evidence to sustain any of the allegations of fraud contained in the bill. The circumstances relied on as indicating bad faith on the part of Theodore Cuyler and John Augustus Girard seem to us to be consistent with perfect integrity on their part. In the argument in behalf of the appellants much was made of the circumstance that in a purchase-money mortgage were included interests which were no part of the property sold. The transaction, however, carries on its face an explanation which, we think, is entirely satisfactory. No part of the purchase money was paid down, nor was any part of the principal to be paid until the end of five years. It was then not unreasonable that the vendors should ask for, and the purchasers should be willing to give, a mortgage security embracing all the interests of the latter in the 12 tracts of land.

The inability of Madame De Roux and her husband to read or understand the English language does not imply ignorance on their part of the provisions of the mortgage they executed, nor does it tend in the slightest degree to overcome the magistrate's certificate that the contents were first fully made known to her. Presumably the contents of the mortgage were fully known to the other mortgagees, namely, Mrs. Peale, Mrs. Clark, and John M. Read, and also to the other mortgagors, namely, Madame De Lentilhac (sister to Madame De Roux) and her husband. Did these parties all connive at the perpetration of a deception upon Madame De Roux? It is significant, and here worthy of note, that while Madame De Lentil-

hac contested the foreclosure sale on other grounds she raised no question as to the inclusion in the mortgage of more property than was intended.

It is said that at the time of the giving of the mortgage the relation of attorney and client existed between Mr. Cuyler and Madame De Roux. But, if this was the case, it is difficult to see how the fact would militate against the integrity of the transaction. Mr. Cuyler got no other or better terms from Madame De Roux than did other mortgagees, who certainly stood in no confidential relation to her. We think, however, that the evidence does not show that the relation of attorney and client existed between Mr. Cuyler and Madame De Roux, either on December 26, 1857, when the mortgage was given, or at the time of the foreclosure proceedings and sheriff's sales thereunder, in 1863 and 1864. The above-quoted recitals from the deed of June 10, 1854, from Girard's heirs to Messrs. Read and Cuyler, conveying to the latter the undivided 15 per centum of the lands, import a full and final settlement for agreed professional services which had been rendered, and that the relation of attorney and client was terminated by that conveyance. The view that confidential relations between Mr. Cuyler and Madame De Roux had ceased is confirmed by the record of the supreme court of Pennsylvania at No. 3 of January term, 1857, put in evidence by the complainants, which shows that on December 5, 1856, a suit in equity was brought in that court by Madame De Roux and other heirs of Stephen Girard against John Augustus Girard, Theodore Cuyler, and others, for the purpose of setting aside two deeds, one of which had put the coal lands under the management of five commissioners (one of whom was Theodore Cuyler), and the other a partition deed relating to the farm lands. On July 7, 1857, a decree was entered by the court setting aside those two deeds, and ordering an account by the commissioners (including Cuyler) of the rents, issues, and profits while the lands were in possession of the commissioners. In that suit Madame De Roux was represented by M. R. Thayer, Esq., as her attorney and counsel.

It appears that on December 26, 1857, the plaintiffs in that suit (including Madame De Roux) executed a release to the commissioners (including Cuyler) of their liability to account under the decree. Now, the three instruments executed on that day, namely, this release and the hereinbefore recited deed and purchase-money mortgage, may, when taken together, imply an amicable settlement of matters in dispute, but they do not import any confidential dealings.

There is some evidence to show that at a date prior to March 27, 1863, a second action of ejectment for the four tracts of coal land was brought in Schuylkill county by the city of Philadelphia against the heirs of Stephen Girard, and tried, but no part of the record of the trial court is before us, and the date of the action, and who were the counsel representing the defendants below, are left to conjecture. All the evidence on the subject we have is the docket entries (without more) in the supreme court of Pennsylvania showing the allowance of a writ of error and brief minutes of subsequent proceedings. A paper was filed in the supreme court dated March 10, 1865, purport-

ing to be a compromise agreement, signed "Theodore Cuyler, for Defendant in Error," whereby one tract was conceded to the plaintiff in error, and the other three tracts to the defendants in error, and a judgment was entered accordingly on March 13, 1865. This, surely, is meager evidence to sustain the allegation that Theodore Cuyler stood in the confidential relation of an attorney to Madame De Roux at the time of the proceedings for the foreclosure of her mortgage and the judicial sales thereunder in the years 1863 and 1864. It will be observed that at the time Mr. Cuyler signed the agreement of compromise he had succeeded to the rights of Madame De Roux by virtue of his purchase at sheriff's sale.

The sheriff's deed to Theodore Cuyler was recorded on November 12, 1864. It is then a matter of no real moment that the deed from James G. Clark to Theodore Cuyler of July 9, 1864, was not put on record until April 18, 1889. There was the like delay in recording the deed of June 21, 1862, from John M. Read to Theodore Cuyler, the honesty of which is beyond question. Moreover, the possession of John Augustus Girard, Theodore Cuyler, and Charles Tete, and those holding under them, and their receipt of the rents, issues, and profits, was open, unequivocal, exclusive, and continuous for considerably more than 21 years before the filing of this bill.

The position taken by the complainants, that Madame De Roux, because a married woman, had no power to mortgage her other real estate for the purchase money of the particular interests sold and conveyed by the deed of December 26, 1857, is wholly untenable. It has always been the law of Pennsylvania, both before and since the married woman's act of 1848, that a mortgage of a wife's real estate, executed by husband and wife, and acknowledged by the wife in the manner required by law in respect to absolute conveyances, will bind her real estate so mortgaged. Jamison v. Jamison, 3 Whart. 457, 31 Am. Dec. 536; Black v. Galway, 24 Pa. 18; Haffey v. Carey, 73 Pa. 431; Hagenbuch v. Phillips, 112 Pa. 284, 3 Atl. 788. The mortgage of Madame De Roux here in question was so executed and acknowledged, and undoubtedly bound all her interests included therein.

In respect to the Vidal interest in these lands, the complainants' claim rests upon an alleged will of Madame Vidal, who died June 15, 1861. We find in this record what purports to be a copy of her alleged will, stated to have been produced on June 17, 1861, before the tribunal of first instance at Bordeaux, France, and ordered to be deposited among the drafts of one Debosq, notary; the alleged office copy here produced being authenticated by the signature and official seal of the United States consul at Bordeaux. We think with the court below that this paper is inadmissible as evidence, and is unavailing to these complainants. The alleged will was not proved by two witnesses, as required by section 6 of the Pennsylvania act of April 8, 1833 (P. L. 249), nor was a duly-authenticated copy probated before the register of wills having jurisdiction in accordance with section 12 of the Pennsylvania act of March 15, 1832 (P. L. 136), relating to wills proved in another country. The paper offered was not evidence to show title in Madame De Roux, or in her children

and heirs, the complainants. The lack of proof of title was fatal to this part of the complainants' case. But, again, the evidence shows that if there was any interest in these lands in Madame De Roux by virtue of the will of Madame Vidal it was exclusively in the coal lands, and such interest was levied on and devested by a sheriff's sale to John B. Solms, made on February 28, 1863, under a judgment obtained in the supreme court of Pennsylvania on November 12, 1862, by Augustus Girard against Madame De Roux and her husband. The sheriff's deed to the purchaser, Solms, was dated March 5, 1863, and acknowledged in open court March 13, 1863. Furthermore, it appears that on June 8, 1868, these entire coal lands were sold by the treasurer of Schuylkill county for the taxes of 1866 and 1867 to William F. Donaldson, to whom the treasurer executed deeds duly acknowledged in open court. After the time for redemption had passed, Donaldson, on March 8, 1871, conveyed these lands to Maria D. Hemphill, Caroline E. G. Peale, Harriet G. Clark, Charles Tete, Ellen E. Girard, and Theodore Cuyler. The effect of such a tax sale is to extinguish all previous titles, and put a good title in the purchaser. Miller v. Hale, 26 Pa. 432. Speaking of the sale to Donaldson, the court below in its opinion said: "There is no evidence of any kind to impeach the regularity, fairness, or validity of this sale, or show that any person concerned therein, or profiting thereby, was in any respect acting fraudulently or in bad faith." We are not persuaded that the court fell into any error in so holding. Upon the evidence on which the complainants rely we cannot say that it is satisfactorily shown that Donaldson stood in any such relation to these lands or to their owners as precluded him from purchasing at the tax sale. The treasurer's sale, then, being to a stranger, he took and could give to Mr. Cuyler and his co-purchasers an absolute title, to the exclusion of Madame De Roux, even if she had had at the time of the tax sale an interest in the lands. Reinboth v. Improvement Co., 29 Pa. 139.

The review of this case ought not to end without a reference to the extraordinary delay in seeking relief for the wrongs here alleged. This suit was commenced 40 years after the giving and recording of the mortgage which is attacked for fraud, 33 years after the purchase at judicial sale by Cuyler and Tete and the recording of the sheriff's deeds to them, 24 years after Madame De Roux, the complainants' mother, became discovert by the death of her husband, and more than 5 years after her death. If the statute of limitations is not a flat legal bar to recovery by the complainants (upon which question we need not express an opinion), the long and unreasonable delay in asserting the claims here set up should preclude redress in a court of equity, in view of the circumstances. Badger v. Badger, 2 Wall. 87, 17 L. Ed. 836; Godden v. Kimmell, 99 U. S. 201, 25 L. Ed. 431; Landsdale v. Smith, 106 U. S. 391, 1 Sup. Ct. 350, 27 L. Ed. 219; Richards v. Mackall, 124 U. S. 183, 8 Sup. Ct. 437, 31 L. Ed. 396; Felix v. Patrick, 145 U. S. 317, 12 Sup. Ct. 862, 36 L. Ed. 719. Not only were the father and mother of the complainants dead when the bill was brought, but John Augustus Girard had been in his grave for over a quarter of a century, and Theodore Cuyler for more than

20 years. In Jenkins v. Pye, 12 Pet. 241, 254, 9 L. Ed. 1070, which was a suit to set aside a deed, the court said that "lapse of time and the death of the parties to the deed have always been considered by a court of chancery entitled to great weight, and almost controlling circumstances, in cases of this kind." John Augustus Girard, Theodore Cuyler, and Charles Tete, and those coming in under them, held by record titles open to Madame De Roux. Their possession under those titles was open and notorious. There was no concealment. It matters not that Madame De Roux resided in France after 1860. She seems to have had a representative in this country. But whether or not this was so, her residence abroad will not explain or excuse her supineness. Her inaction can be accounted for only on the hypothesis that she knew she had no just claims to this property.

There only remains for consideration the assignments of error relating to the ruling of the court below (90 Fed. 537) that the complainant John Joseph Etienne Louis De Roux was not a competent witness to testify with respect to what occurred on December 26, 1857, in the matter of the giving of the purchase-money mortgage, and the perpetration by John Augustus Girard and Theodore Cuyler of the alleged fraud upon Madame De Roux in including therein her coal interests without her knowledge. We think that, under the proviso to section 858 of the United States Revised Statutes, De Roux was clearly incompetent to testify as to those transactions. When offered as a witness, he was a party plaintiff in the action, which was against an executrix and an administrator, and in which judgment might be entered against them. One of the main purposes of the bill was a decree for an accounting and reconveyance against the estates of John Augustus Girard and Theodore Cuyler, both of whom were dead. The proposed examination was with respect to transactions with these deceased persons.

With a view of removing objection to his competency as a witness, De Roux, on October 20, 1898, executed an assignment under seal to his wife, Florence De Roux, of all his interest in the intestate lands of Stephen Girard, and in the accrued rents, issues, and profits thereof, and in the pending suit, the expressed consideration being "love and affection" and "one dollar," and on the same day he executed an assignment under seal to his brother and co-complainant of all his possible expectancy of interest therein as tenant by the curtesy or otherwise, the consideration stated being "value received," without more. Afterwards he filed with the clerk of the court a written order that his interest in the case be marked for the use of his wife. These expedients, we think, were ineffectual to meet the objection to his competency. In Bridges v. Armour, 5 How. 91, 12 L. Ed. 64, it was held by the supreme court of the United States that a party upon the record, although devested of all interest in the event of the suit, is not a competent witness in a cause. De Roux remained a complainant. His wife was not substituted as complainant, nor was she even made a co-complainant. By the law of Pennsylvania, also (if that law be here applicable at all), De Roux was incompetent as a witness notwithstanding his assignments. Post v. Avery, 5 Watts & S. 510; Darragh v. Stevenson, 183 Pa. 397, 39 Atl. 37; Bitner v. Boone,

128 Pa. 567, 18 Atl. 404. The court, we think, was right in holding that the complainant De Roux was incompetent to testify as to transactions with the testator or intestate of parties defendant.

The decree of the circuit court dismissing the bill of complaint is affirmed.